MURDOCH (KEITH v.). See Case No. 7,652.

MURDOCH v. SHACKELFORD. See Case No. 9,937.

MURDOCH (UNITED STATES v.). See Case No. 15,836.

MURDOCH (WHETMORE v.). See Case No. 17,509.

———

## Case No. 9,937.

### MURDOCK et al. v. SHACKELFORD.

[1 Brock. 131.]

Circuit Court, D. Virginia.    May Term, 1808.

WILLS—EXECUTORY DEVISE—CONTINGENCY.

A testator lent to his son W. a tract of land for life, "and if he has children, at his death, he may dispose of it to them as he thinks proper, reserving to his now wife the use of the land during her life, as long as she remains his widow; but if she marry, then she is to have only one-third part; the whole or part, whichever she has, is to be held without committing waste. If

my son W. dies without heirs of his body, then the land, with the consideration above-mentioned, to go to my son Z.," &c. This is an executory devise to W. in tail, after an estate for life to himself, remainder in fee to his children living at the time of his death, which executory devise in tail is to take effect on the contingency of his dying without children living at the time of his death.

The complainants [Murdock, McDonald & Co.], English merchants, exhibited their bill in 1803, against the defendants, heirs of William Shackelford, deceased, stating that they had recovered a judgment in an action of debt against the said Shackelford, in the county court of King and Queen, in 1773, still remaining due and unsatisfied at the institution of this suit; that the said Shackelford died intestate on the —— day of ——, seized and possessed of a considerable property, real and personal; that the said Shackelford left a widow and several children, among whom his property was divided, and that his widow was still in possesion of a tract of land of which William Shackelford died seized. The bill further states, that letters of administration on the estate of William Shackelford had been granted to a certain John Harwood, who had removed from the state, and had since died. The plaintiffs also seek to charge the land of William Shackelford with the amount of a bond for £168 15s. 8d., executed by William Shackelford, and which they allege is lost or mislaid. The defendants denied all knowledge of the claim asserted in the complainants' bill, and pleaded the statute of limitations in bar of a recovery. They admit, that William Shackelford died intestate in 1783, possessed of a certain tract of land derived from his father, Richard Shackelford; but insist, that he had only a life estate in the land sought to be charged. They refer to the clause in Richard Shackelford's will, under which the title of William Shackelford was derived, in proof of the position, that the interest of William Shackelford was limited to a life estate; and they further deny, that they have ever derived any other estate, real or personal, from their intestate William Shackelford. The following opinion of the court contains the clause of Richard Shackelford's will, upon the construction of which the right of the plaintiffs to charge the land devised by it to William Shackelford, with his debts after his death, depended.

MARSHALL, Circuit Justice. This cause depends entirely on the construction of the will of Richard Shackelford. The following is the material clause of that will:—"I lend to my son William during his life, the tract of land whereon I now live; and if he has children at his death, he may dispose of it to them as he thinks proper, reserving to his now wife the use of the land during her life, as long as she remains his widow; but if she marry, then she is to have only one-third part; the whole or part, whichever she has,

17 FED.CAS.—64

is to be held without committing waste. If my son William dies without heirs of his body, then the land, with the consideration above-mentioned, to go to my son Zachariah; and if he should die without heirs of his body, then it is my desire, that it be equally divided between my two daughters, Elizabeth and Frances, to them and their heirs for ever." William died leaving children, and the question is, whether he took an estate for life, or in fee, in the lands devised to him. That the intention of the testator was to give William only an estate for life, has not been, and cannot, with any semblance of reason, be controverted. The will was most probably drawn by a lawyer, who appears to have sought for terms of art which should secure this intent. 1st. The estate to William is expressly limited to his life. 2dly. It is not given for that period, but is lent—a distinction to which some importance has been attached. 3dly. The rights of the wife are secured by giving her the whole estate, while she was his widow, and her dower in the event of a second marriage. It is seldom that the intent of a testator, that the first devisee should take only an estate for life, appears as conclusively, as in this case. It is apparent that the testator intended to give to William an estate for life, remainder to the wife of William during her widowhood, with the right of dower in case of marriage, remainder to the children of William in such proportions as he should appoint. Thus, William has an estate for life, with power to dispose of the whole estate among his children living at his death. If the will stopped with these provisions, the intent of the testator would be obvious; and as no rule of law would conflict with that intent, the suit would probably never have been instituted. But the subsequent provisions of the will are supposed to manifest a clear intent, incompatible with, and which must overrule the intent, so plainly expressed in the first clause, to give William only an estate for life. The words which are supposed to evidence an intent, which cannot stand with a limitation of the estate to William for life, are these: "If my son William, dies without heirs of his body, then the land to go to my son Zachariah." These words are said to create an estate tail in William. That it was the intention of the testator, to postpone Zachariah, until there should be a failure of the issue of William, is believed; and that in the event contemplated, William would have taken an estate tail, by implication, is perhaps the sound legal interpretation of the will. But what is that event? The obvious answer is, the death of William, without children. It is obvious, that the testator intended to prefer all the issue of William to Zachariah, and, therefore, that the issue of William, must be exhausted, before the remainder to Zachariah could vest. In that case, the issue of William, if not children, must take in tail, for which purpose, the estate tail must be in William, or it could

not descend on them. But the words of the testator must be totally disregarded, if we do not admit, that the children of William, living at his death, are to take in preference to the issue of such child as may be dead. To enable those children to take, in the manner described by the testator,' the estate to William, must be limited to an estate for life: to enable the issue to take, if there be no child, the estate of William must be enlarged to an estate tail. These two intents are said to be incompatible with each other, and it is contended, that the former must yield to the latter. If they are, indeed, incompatible, it would not follow, that the former must yield to the latter. The children living at the death of William, so far as the words of the testator are to be regarded, were the first objects of his bounty. They were preferred to the issue of such, as might then be dead, and as they might take an estate in fee, no good reason is perceived, why this superior object should be made to yield to another, which was, in the mind of the testator, inferior to it. But no incompatibility of intent is perceived. The devises may well stand together. This is an executory devise to William, in tail, after an estate for life in himself, remainder in fee to his children, living at the time of his death. which executory devise in tail, is to take effect on the contingency of his dying. without children living at the time of his death. This construction gives full effect to the whole intention of the testator, as expressed by himself, and is not perceived to be repugnant to any rule of law. This case very strongly resembles that of Roy v. Garnett, 2 Wash. [Va.] 11, which was very maturely considered, both by the bench and bar. The doubt, in Roy v. Garnett, was, whether in the event of the devisee for life, dying without male children, his estate would be enlarged by the implicative devise, so as to enable his issue to take before the remainderman; but it was conceded by the counsel for that issue, that if any male child, or children of the devisee for life, had been living at the time of his death, such male child or children must have taken under the will, and the estate of the devisee for life would not have been enlarged into an estate tail.

DECREE. This cause came on this day to be heard, on the bill and answer, and the last will and testament of Richard Shackelford, deceased, filed as an exhibit, and was argued by counsel; on consideration whereof, the court being of opinion, that the lands in the hands of the defendants are not chargeable to the plaintiffs, it is decreed and ordered, that their bill be dismissed, &c.