No. 24,446.

GEORGIA GARDNER, *Appellant,* v. ARTHUR R. ANDERSON and HARRY DICKEN, Trustees and Executors of the Will and Estate of Zimri Gardner, *Appellees,* (C. J. GARDNER, *Appellant*).

SYLLABUS BY THE COURT.

1. WILL—*Interpretation—Devise Vests an Estate Tail in Plaintiff.* Where a testator devises property to his daughter for life with remainder to her issue not then in being and if she should die without issue the property should "revert to the Gardner estate," such a devise by operation of law vests an estate tail in the daughter.

2. SAME—*Estate Tail—Created by Rule of Law—Not by Interpretation.* Where an estate tail is created by the will of the testator, it is such by a positive rule of law and not by a mere rule of interpretation; and the legal consequences of its creation are unaffected by the testator's intention.

3. SAME—*Bequest of Property to an Estate is Void.* A devise or bequest of property to an estate is void because an estate is not a person or legal entity capable of taking it, and the result is an intestacy.

4. SAME—*Devise of Personalty—Passes Absolute Estate.* A devise or bequest of personalty in language which would create an estate tail if the property were real estate passes an absolute estate to the first taker.

5. SAME—*Devise Creating an Estate Tail Not Defeated by Interpretation.* A devise which creates an estate tail by operation of law is not to be defeated by a debatable interpretation of the implied powers vested in the executors and trustees named in the will.

6. SAME—*A Brother of Testator no Present Justiciable Interest in Estate of Testator.* A brother of the testator has no present justiciable interest in the estate of a testator who created an estate tail in his daughter and sole heir at law, notwithstanding the will provided that in the case of her death without marriage and issue the property devised should revert to the testator's (or daughter's) estate.

Gardner v. Anderson, *Trustee.*

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed December 8, 1923. Reversed as to Georgia Gardner and affirmed as to C. J. Gardner.

*J. H. Mitchell,* of Lawrence, *S. D. Scott,* of Olathe, *C. W. Burch, B. I. Litowich,* and *LaRue Royce,* all of Salina, for appellant, Georgia Gardner. *J. W. Parker,* and *G. A. Roberds,* both of Olathe, for appellant C. J. Gardner.

No appearance was made for the appellees.

. The opinion of the court was delivered by

DAWSON, J.:   This action was brought by Georgia Gardner to procure a construction of the will of her father, the late Zimri Gardner of Johnson county. The executors and trustees were made defendants; and C. J. Gardner, uncle of Georgia and brother of the testator, was made a defendant on his own application.

Part of the will reads:

"First. I hereby give and bequeath to Anna Thomas the sum of Seven Hundred Fifty Dollars, also all of my household effects, consisting of furniture, bedding, dishes, and in fact all household goods.

"Second. I hereby give and bequeath to my daughter, Georgia Gardner, the remainder of my property, both personal and real, for the length of her lifetime only. My direct intention being that she shall have the income only from said property.

"Third. Should my daughter, Georgia Gardner marry and have issue, then I direct that at her death my property shall descend to them equally, share and share alike. In the event of no issue, then at her death, all my property shall revert to the Gardner estate.

"Fourth. I direct that all my debts and expenses incurred in my last sickness shall first be paid.

"Fifth. I hereby appoint Arthur R. Anderson and Harry Dickens trustees to carry out the provisions of this will, and they shall have the power to make such investments as to them seem best, and shall pay over to the said Georgia Gardner the net income from said property. I direct that said trustees shall not be required to give bond."

The plaintiff alleged that she was the only daughter and sole heir of Zimri Gardner, that she was of age, unmarried and without issue. Her petition then narrated the execution of the will, its admission to probate, the appointment and qualification of the executors and trustees, the extent and description of the property disposed of by will, and the possession of the property by the trustees. Plaintiff further alleged that a doubt and uncertainty had arisen as to the true construction of the will—the defendant trustees claiming to have authority to hold possession and manage the property until she

should marry and have issue and thereafter to hold and manage the property until her death and then divide between her issue, and in case plaintiff died without issue to turn the property back to her deceased father's estate; but plaintiff's construction of the will was that the duties of the trustees were purely nominal; that under section 11686 of the General Statutes of 1915 the lands of her father devised to the trustees passed to her by operation of law; that by the second paragraph of the will the legal title to all the property was vested in plaintiff; that the third paragraph created an estate tail which vested in plaintiff the absolute ownership together with full control, management, possession and right of disposition, and vested in plaintiff the right to sell it and give good title; and that the part of the third paragraph which provides that if no issue be born to plaintiff the property should revert to the Gardner estate was void—

"(a) Because it is in violation of the rule against perpetuities.

"(b) Because an 'estate' of a person is not a person or entity which can take under a will as provided by the laws of Kansas."

Plaintiff prayed for all appropriate relief. The executors and trustees answered, in part, as follows:

"4. These defendants allege that it was the intention of the said Zimri Gardner, in executing his said will that these trustees should hold all of his said property and make investments as should to them seem best, and to pay over to the plaintiff the net income of the said property, and that upon the death of the said plaintiff without issue surviving her all of the property remaining in the hands of these trustees should then be paid over to the brothers and sisters of said Zimri Gardner, and would then constitute his heirs to whom would descend all the property of his estate under the laws of the State of Kansas, and they ask the court to so construe said will. . . .

"6. Plaintiff ought not to recover for the reason that said Zimri Gardner left brothers and sisters to whom would descend the said estate in the event of plaintiff's dying without issue."

C. J. Gardner, in part, answered:

"4. This defendant says that said will should be construed to give control of the estate of Zimri Gardner, deceased to the said trustees during the life time of plaintiff, and at her death, if she shall die without issue, to pay and deliver said estate to this defendant and his brothers and sisters and the issue of such of the brothers and sisters as may then be deceased."

The parties stipulated that the testator had several sisters and brothers, including defendant C. J. Gardner, at the time of his death, and the names of these are set out in the record.

The trial court decided—

"That the will of Zimri Gardner deceased, creates an active trust. That the trustees are to manage the estate and to pay the income thereof to the plaintiff, Georgia Gardner, during her lifetime. At her death the property vests in the issue of Georgia Gardner, if she shall have issue, and if she has no issue, the property, the court finds, should vest in her legal heirs. The court further finds that the defendant C. J. Gardner has no interest in the estate."

The plaintiff and C. J. Gardner appeal.

The principal contention of Georgia Gardner is that the devise of the life estate to her with remainder to her issue created in her an estate tail, with whatever legal consequences may flow therefrom.

What is an estate tail? An estate tail or fee tail is a freehold estate in which there is a fixed line of inheritable succession limited to the issue of the body of the grantee or devisee, and in which the regular and general succession of heirs-at-law is cut off. (2 Bouvier's Law Dict'y [Rawle's 3d rev.] 1200; 21 C. J. 931.)

"The expression *fee-tail,* or *feodum talliatum,* was borrowed from the feudists (see Crag. 1. 1. t. 10, S. 24, 25); among whom it signified any mutilated or truncated inheritance, from which the heirs general were cut off; being derived from the barbarous verb *taliare,* to cut; from which the French *tailler* and the Italian *tagliare* are formed. (Spelm, Gloss. 531.)" (Note in 1 Cooley's Blackstone, 3d ed., 387.)

"Next, as to the several species of estates-tail, and how they are respectively created. Estates-tail are either general or special. Tail-general is where lands and tenements are given to one, and the heirs of his body begotten. . . . Indeed, in last wills and testaments, wherein greater indulgence is allowed, an estate-tail may be created by a devise to a man and his seed, or to a man, and his heirs male; or by other irregular modes of expression." (1 Cooley's Blackstone, id. 387-8.)

An estate tail may lawfully be created in Kansas. In *Ewing v. Nesbitt,* 88 Kan. 708, 129 Pac. 1131, this subject was carefully considered and it was there said:

"Nothing is to be found in the acts relating to conveyances, descents and distributions, or wills, incompatible with the existence of such estates, and in their unfettered form such estates are not out of harmony with the conditions and wants of the people of Kansas. . . . The overweening propensity to perpetuate family name and family property which made estates tail so obnoxious in the middle ages is fairly curbed by the right of a tenant in tail to convert his tenancy into a fee simple, and is not a menace to the general welfare of the people of this state; and it will be remembered that this right became one of the characteristics of the estate." (p. 716.)

In *Grossenbacher v. Spring,* 108 Kan. 397, 195 Pac. 884, where

the contention was made that an estate tail was vested in the testator's grandchildren through the creation of a trust estate in their favor to endure during their lives with remainder in fee to their bodily heirs, the court said:

"The testator did not devise his property directly to his grandchildren. . . . The will does not create an estate tail which may be broken by a conveyance. To do so it would have been necessary that the will should devise directly and without restricting qualifications a life estate in each of the grandchildren with remainder over to the heirs of their bodies in allodial fee. (*Ewing v. Nesbitt*, 88 Kan. 708, 129 Pac. 1131; *Bryant v. Flanner*, 99 Kan. 472, 162 Pac. 280.)" (p. 400.)

The case of *Wood v. Burnham*, 6 Paige Ch. Rep. 513, was to the same effect.

In the present case the devise of the life estate is to Georgia Gardner, with remainder to her issue if she should have any issue. Surely such a devise creates an estate tail in Georgia Gardner.

Before examining analogous cases in other jurisdictions it is well to remember that the rule in Shelley's case may still prevail in some states, in others like Kansas it still prevails in the interpretation of deeds but has been abrogated by statute so far as wills are concerned (Gen. Stat. 1915, § 11808; *Grossenbacher v. Spring*, 108 Kan. 397, 402, 195 Pac. 884); and in a number of the states Shelley's rule has been abrogated as to both deeds and testaments. But while these divergent attitudes of the law towards Shelley's rule may and often must lead to different consequences, there is not much want of uniformity as to what sort of devises constitutes an estate tail.

In *Trumbull v. Trumbull*, 149 Mass. 200, 4 L. R. A. 117, it was said:

"A devise to one, and, if he die without heirs of his body, then over to another, would create an estate tail in the first taker, whatever the actual intention of the testator might have been." (p. 202.)

In *Sumpter v. Carter*, 115 Ga. 893, 60 L. R. A. 274, it was said:

"If the devise had been of an immediate estate, to vest in interest and in possession at the death of the testator, as directly, in the first place, to a daughter and her children (the daughter having no children when the will took effect), there could then be no doubt that such devise would create an estate tail in the daughter." (p. 901.)

In *Hall v. Smith*, 25 Gratt. (66 Va.) 70, the testator's will devised a portion of his estate to his daughter during her life, "and after her death I give the same to the lawful issue of her body." It was held

Gardner v. Anderson, *Trustee.*

that the daughter took an estate tail in the realty, and an absolute estate in the personalty.

In *Hertz v. Abrahams,* 110 Ga. 707, 50 L. R. A. 361, there is a review of the English cases holding, uniformly, that a limitation over of real estate if the first taker dies "leaving no issue," or "without leaving issue," unexplained, means upon an indefinite failure of issue, and creates an estate tail. In Georgia an estate tail is converted into a fee-simple estate by statute, but the headnote is instructive and pertinent. It reads:

"1. The intention of a testator, if legal, governs the construction of his will, and is to be ascertained from the words thereof. If he uses words which clearly create one estate, though he designed another, his intention must yield to the rules of law.

"2. A will is to be construed by the law existing when, upon the testator's death, the will takes effect. [a] Whether words in a will made by a testator who died before the act of February 17, 1854, create an estate tail is to be controlled by the decisions of the English courts construing such or similar words in devisees of real property, in connection with the statute *de donis conditionalibus.*

"3. A devise to A for her separate use, and, in case she has no issue, to B before the act of 1854, is a device limited upon an indefinite failure of issue, which, under the English rules of interpretation, created an estate tail by implication under the statute *de donis,* and is therefore enlarged into a fee-simple estate by our act of December 21, 1821. An executory devise which was limited upon words importing an indefinite failure of issue of the first taker, under the law when the will in this case took effect, was uniformly held to be void for remoteness."

When by its earmarks it is certain that an estate tail has been created, it is such by a positive rule of law and not because of some mere rule of interpretation, and the legal significance and consequences of its creation are unaffected by the testator's intention. Nor is this doctrine a mere qualification upon the oft-repeated rule that paramount consideration is to be given to the testator's intention where that can be clearly discerned from the testament itself. If I should make a holographic will and sign it and have it attested by one witness only, my testamentary intention would be perfectly clear, but the will would be invalid and my intention defeated, because of a positive statute which I have ignored. (Gen. Stat. 1915, § 11753.) So, too, if I should attempt to tie up my property for fifty years beyond the life of my youngest grandchild, my testamentary intention, though perfectly clear, would be disregarded because a positive rule of law against perpetuities had been infringed.

(*Lasnier v. Martin*, 102 Kan. 551, 171 Pac. 645; *Kirkpatrick v. Kirkpatrick*, 112 Kan. 314, 211 Pac. 146.)

So here, while it is clear enough that the testator did not intend that his daughter Georgia should have anything other than a life estate in this property, and that the remainder should devolve on her issue, with a limitation over upon the indefinite failure of issue, nevertheless the estate thus created constitutes an estate tail, which Georgia has the right to hold and continue in force (within the rule against perpetuities), or to terminate by conveyance at her discretion.

If the question of the estate tail be passed, it will have to be noticed that the will provides that if Georgia has no issue, then the testator's property "shall revert to the Gardner estate." That direction is either a bequest or it is not. If it is a bequest, it is void because an estate cannot be a devisee or legatee. "The estate of a deceased person is not a person or entity which can take under a will." (Estate of Glass, 164 Cal. 765.) This would result in a partial intestacy. If it is not a valid bequest or devise of a limitation over of the remainder estate on indefinite failure of issue, then there is an intestacy as to the remainder estate because it is not otherwise bestowed. In either view, Georgia Gardner would take the intestate property as sole heir at law. Thus if by any possibility it could be said that the will did not create an estate tail in Georgia, she being the life tenant, and sole heir at law of the remainder estate, would have both ends of the title, and this would constitute her the owner in fee simple.

The will also devises to Georgia a life estate in the personal property with remainder to her issue. This would also be an estate tail, but that personal property is regarded as of so fleeting a nature that the courts will not clothe it with that dignity. A life estate in a farmer's personal property—horses, cows, pigs, chickens, or even his wheat, corn and potatoes—to one devisee, with remainder over to the heirs of the devisee's body, would be an intolerable nuisance to the first taker, to the remainderman, and to the courts as well. So the authorities are uniform that an estate tail in personal property operates as an outright grant to the first taker. In 40 Cyc. 1602, it is said:

"As estates tail have never existed in personal property, language which would create an estate tail in real estate will pass an absolute estate in personal property, and this rule applies as to the personalty, although in the dis-

position of property realty and personalty are blended together; but unless the language of the will requires such a construction it should not be construed as attempting to bequeath personal property in tail."

In 1 Cooley's Blackstone, 3d ed., 387, it is said:

"But mere personal chattels, which savour not at all of the realty, cannot be entailed."

In the case of Account of William R. Tillinghast, 25 R. I. 338, the headnote in part reads:

"Testamentary bequest (4th) to A., for and during his natural life, the profits and income of 16 shares of stock, and after his death the principal of said stock to the heirs of his body, and in default thereof to the children of B., equally:—

"*Held*, that the testator used words which, if applied to real estate, would create an estate tail; and which, therefore, applied to personalty made the gift absolute in the first taker."

Counsel for C. J. Gardner find some analogy between this case and that of *Grossenbacher v. Spring*, supra. But in that case there was no devise to life tenants with remainder limited to their issue. Here there is exactly that sort of devise, and therefore one which constitutes an estate tail. When an estate tail is created it cannot be defeated by some general language in the will which would otherwise be susceptible of a debatable interpretation that the express and implied duties imposed on the executors constituted an active trust. An estate tail is not to be measured by the powers conferred upon the trustees, but the powers of the trustees should be measured and construed by the more potent fact that an estate tail has been created. Under this will, the executors and trustees must see that Anna Thomas receives the goods and money bequeathed to her, and consequently, if necessary, they may sell enough of testator's property to satisfy that bequest. They must pay the testator's debts and funeral expenses, and consequently may realize cash out of assets for that purpose. The fifth clause of the will also provides that "they shall have power to make such investments as to them seem best." Now what can that possibly mean in this case? It cannot mean that they can sell some of the real estate and invest the proceeds, because after the bequest of money and household goods to Anna Thomas, the testator gave and bequeathed the residue, both personal and real, to Georgia for life, and the remainder to her issue. It cannot apply to the personalty, because, as we have seen, a devise of personalty for life to one person with the residue to that person's issue is in legal effect an unqualified grant to the first taker.

The foregoing necessarily disposes of the contention that C. J. Gardner has any interest at this time in this property. Georgia holds the estate tail in the realty and the personal estate absolutely. If she is content during her lifetime to respect the entailment imposed on the estate devised to her and never marries and never has issue, legal consequences may flow therefrom which will concern C. J. Gardner, but the judgment in the present case will not be construed nor permitted to prejudice his rights or those of his heirs in that contingency.

The judgment as to Georgia Gardner is reversed and as to C. J. Gardner it is affirmed.

BURCH, J., not sitting.

HOPKINS, J., dissenting.