Gardner v. Anderson, *Trustee.*

No. 24,446.

Georgia Gardner, *Appellant,* v. Arthur R. Anderson and Harry
Dicken, Trustees and Executors of the Will and Estate of Zimri
Gardner, *Appellees* (C. J. Gardner, *Appellant*).

OPINION ON REHEARING.

SYLLABUS BY THE COURT.

1. Will—*Interpretation*—*"Heirs in Fee" Not the Equivalent of "Issue."* In
   R. S. 22-256, which provides—

   "When lands, tenements or hereditaments are given by will to any per-
   son for his life, and after his death to his heirs in fee, or by words to that
   effect, the conveyance shall be construed to vest an estate for life only in
   such part taken, and a remainder in fee simple in his heirs," the words "heirs
   in fee" are not the equivalent of "issue" as used in a devise of real estate to
   a person for life and at her death to her "issue."

2. Same—*The Word "Issue" Defined.* In a devise to a person for life and at
   her death to her issue, the word "issue" means "offspring," "progeny,"
   "lineal descendants," but not mere statutory heirs or heirs at law.

3. Same—*Estate Tail or "Fee Tail" Defined.* An estate tail or fee tail is a
   freehold estate in which there is a fixed line of inheritable succession
   limited to the issue of the body of the grantee or devisee, and in which
   the regular and general succession of statutory heirs at law is cut off.

4. Same—*Rules of Statutory Construction of Wills.* The rules of statutory
   construction (R. S. 77-201 *et seq.*) require that technical words and phrases
   such as "issue" and "heirs in fee" must be construed according to their
   peculiar and appropriate meaning, and forbid a loose interpretation that
   they may be regarded as synonymous.

5. Same—*Estates Tail May Be Lawfully Created in Kansas.* Rule an-
   nounced in *Ewing v. Nesbitt,* 88 Kan. 708, 129 Pac. 1131, that estates tail
   may lawfully be created in Kansas, followed; and *held,* that R. S. 22-256
   has no concern therewith.

6. Same. Other objections to the judgment of reversal considered and not
   sustained.

Appeal from Johnson district court; Jabez O. Rankin, judge. Opinion on
rehearing filed July 5, 1924. Judgment of reversal adhered to. (For original
opinion see 114 Kan. 778.)

*J. H. Mitchell,* of Lawrence, *S. D. Scott,* of Olathe, *C. W. Burch, B. I.
Litowich,* and *LaRue Royce,* all of Salina, for appellant Georgia Gardner.
*J. W. Parker,* and *G. A. Roberds,* both of Olathe, and *Harry K. Allen,* and
*Thomas Amory Lee,* both of Topeka, for appellant C. J. Gardner.

No appearance was made for the appellees.

The opinion of the court was delivered by

DAWSON, J.: In recognition of the importance of one of the questions involved, a rehearing has been granted in this case, wherein we held (114 Kan. 778) that an estate tail was created by the following provisions of the will of the late Zimri Gardner:

"Second. I hereby give and bequeath to my daughter, Georgia Gardner, the remainder of my property, both personal and real, for the length of her lifetime only. My direct intention being that she shall have the income only from said property.

"Third. Should my daughter, Georgia Gardner, marry and have issue, then I direct that at her death my property shall descend to them equally, share and share alike. In the event of no issue, then at her death, all my property shall revert to the Gardner estate." (p. 779.)

The court has been favored with new briefs of counsel for the litigants as well as by *amici curiœ*. These have been carefully studied and the oral arguments at the rehearing duly considered, and the points especially stressed on our attention will be noted below.

Counsel say that the case is controlled by R. S. 22-256, which reads:

"When lands, tenements or hereditaments are given by will to any person for his life, and after his death to his heirs in fee, or by words to that effect, the conveyance shall be construed to vest an estate for life only in such part taken, and a remainder in fee simple in his heirs."

This contention is apparently based on the assumption that the words of the statute "heirs in fee," are the equivalent of "issue" as used in Zimri Gardner's will. The will provides that if Georgia Gardner marry and have issue, then the property at Georgia's death is to descend to the issue of Georgia, share and share alike. Would it alter the intention of the testator to strike out the word "issue" in this will and substitute the words of this statute, "heirs in fee"? Would it be proper to say that the testator meant that if Georgia should marry and have "heirs in fee," they would take after her death? Georgia would certainly have one *heir in fee* if she married—her husband—whether she had any other heirs in fee or not. If the word "issue" is equivalent to "heirs in fee" as used in the statute relied on, then it is absurd to give lip-service respect to the decision in *Ewing v. Nesbitt*, 88 Kan. 708, 129 Pac. 1131. It should be candidly admitted that such decision was wrong and

Gardner °v. Anderson, *Trustee.*

that no such thing as an estate tail can be created in Kansas by a will. The devise in the Nesbitt case was—

"Fourth: I will and bequeath to my daughter, Mary A. Nesbitt, *nee* Ewing, and to the heirs of her body, the south half (½) of the northwest quarter (¼) of section No. twenty-one (21), township thirteen (13), of range twenty-four (24), in Johnson county, Kansas." (p. 708.)

Where a daughter's marriage and the probable issue from such marriage are under consideration, "heirs of her body" and "issue" are synonymous terms; they both mean her offspring, progeny, lineal descendants. Counsel make the marvelous contention that the case of *McCartney v. Robbins,* 114 Kan. 141, 217 Pac. 311, is at variance with our first decision herein. Counsel say it "is flatly contradictory to the Gardner case and requires the court to hold that Georgia Gardner received only a life estate instead of a fee tail. We do not believe that there is any distinction between the two cases, and if the McCartney case is right, then the Gardner case is wrong." Just note the text of that devise:

"The north half of said section 17 I give to my said son George L. McCartney, during his natural life, and at his death to his heirs, as the statute in such case provides."

If that devise is to the same intent and effect as the one at bar, then indeed our error in this case on rehearing must be confessed. But to so hold it would be necessary to say that the words "heirs, as the statute in such case provides," in the McCartney case are synonymous with "issue" in the Gardner case. The equivalence of these words cannot be admitted, by authority, by common understanding, nor by statute, as we will later show. Before leaving the McCartney case, however, note the words in apposition to and explanatory of "heirs." The remainder is to the heirs of George L. McCartney, "as the statute in such case provides." What statute? The statute of descents and distributions, of course. That is to say, the testator provided that after the death of George the land should descend to the heirs of George in inheritable succession according to the statute. Now let us recur to some elementary ideas of what is an estate tail and see if they will help us to clarify and solve the proposition before us. Can we agree on a definition of an estate tail? Since the learned counsel take no exception to what we originally defined an estate tail to be (114 Kan. 778, 781, 227 Pac. 743), it may here be repeated:

28—116 Kan.

"What is an estate tail? An estate tail or fee tail is a freehold estate in which there is a fixed line of inheritable succession limited to the issue of the body of the grantee or devisee, and in which the regular and general succession of heirs at law is cut off." (p. 781.)

It would seem, therefore, that a deal of cloudy thinking and fallacious reasoning can be avoided in this case by remembering what an entailment of an estate is: an interference with, and curtailment of, the ordinary rules pertaining to its devolution by inheritance; it is a limitation and direction by which, and according to which, the property is to descend, *different* from the course which it would take if the creator of the entailment, grantor or testator, had been content that the estate should devolve in regular and general succession to heirs at law in the statutory order of precedence and sequence. But for this entailment, this interference with and curtailment of the devolution of this Gardner property after creating a life estate in Georgia, the remainder would pass to her heirs at law—to her husband and children if she had them, to her husband alone if she had no children, to her children alone if she had no husband, to the appellant C. J. Gardner and his brothers and sisters if she had neither husband nor children. But Zimri Gardner chose not to permit his property to descend in inheritable succession according to the statute of descents. To borrow the language of the feudists, as did Blackstone, quoted in 114 Kan. 781, the testator *mutilated* the ordinary rules of inheritance; he *truncated* them; he *fettered* the inheritance of the estate—the thing that was wont to rouse the wrath of Lord Coke (1 Inst. 5, 19*b*) ; he cut off the succession of heirs general, and created and defined a line of inheritable succession to suit himself. And this is the essential and distinguishing earmark which denotes the erection of an estate tail. It is the creator's own substitution of a limited, peculiar and restricted line of inheritable succession to property different from that prescribed by the statute of descents, or by the common law where such a statute is wanting.

"Any expressions in the will denoting an intention to give the devisee an estate of inheritance descendible to his or some of his lineal, but not collateral, heirs, have always been regarded as a sufficient devise of a fee tail. 3 Jarm. Wills (R. & T. ed.) 89; 1 Washb. Real Prop. 109; 2 Bl. Com. 115; *Den v. Fogg,* Pen. 819; *Somers v. Pierson,* 1 Harr. 181; *Den v. Cox,* 4 Halst. 10; *Den v. Fox,* 5 Id. 39; *Weart v. Cruser,* 20 Vroom 475." (*Doty v. Teller,* 54 N. J. L. 163, 166.)

With this in mind, the interesting question before us can be readily and unerringly decided on logical grounds and upon principle,

whatever lack of relevancy the hypercriticism of counsel may find in the authorities cited in our original opinion. It cannot be denied that the excerpts we made from these authorities are accurate, and they carry on their face their relevancy for the purpose for which they were incorporated.

. There is a very potent reason why the court can give no countenance to a loose interpretation of the words "heirs in fee" as meaning "issue," or suffer them to be used synonymously and interchangeably. Our rules of statutory construction provide:

"*Second.* Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such peculiar and appropriate meaning." (R. S. 77-201.)

It cannot be denied that the words "heirs in fee" and "issue" have long possessed a peculiar and appropriate meaning in law, and their respective meaning and the clear distinction between them must neither be slighted nor confused. Moreover, the statute itself defines the word "issue."

"*Seventh.* The word 'issue,' as applied to the descent of estates, includes all the lawful lineal descendants of the ancestor." (R. S. 77-201.)

On the other hand, an "heir" or "heir at law" is simply the person designated by the statute who succeeds to the estate of a deceased person, and the statute may make anybody an heir. An "heir in fee" is merely the person on whom the fee title devolves by the statutory rules of inheritable succession.

Blackstone says: .

"We are to reflect, in the first place, that all rules of succession to estates are creatures of the civil polity, and *juris positivi* merely . . . There is certainly, therefore, no injustice done to individuals, whatever be the path of descent marked out by the municipal law." (1 Cooley's Blackstone, 3d ed., book II, pp. 451, 452.)

In *McKinney v. Stewart,* 5 Kan. 384, 392, it was said:

"The statute may make any person an heir. An heir in law is simply one who succeeds to the estate of a deceased person. In this sense the wife is an heir of her deceased husband, and when her deceased son has no wife, child, or father, she is his heir."

To this court the difference between "heirs" and "issue" would seem so clear as to require no discussion, but we have given the point so much space because of the insistence of counsel that R. S. 22-256 and the McCartney case, *supra,* are at variance with our

first decision. Since *Ewing v. Nesbitt, supra,* was decided, this court has repeatedly recognized the validity of estates tail under our law. In *Wiggins v. Powell,* 96 Kan. 478, 152 Pac. 765, there was a grant of Decatur county land to "Clarinda E. Smith and to the children either now or hereafter begotten of Josiah Smith and said Clarinda E. Smith." While the case was partly disposed of on other grounds, this court, speaking by its chief justice, declared that an estate tail had been created by the grant, and which had been barred and cut off by a conveyance executed by the tenant in tail.

In *Busey v. Stockhoff,* 88 Kan. 729, 129 Pac. 1135, the existence of an estate tail was recognized, and also the right of the tenant in tail to cut off the entailment by a deed.

In *Bryant v. Flanner,* 99 Kan. 472, 162 Pac. 280, the validity of such an estate in Kansas was conceded, although its creation in that case was denied because of other inconsistent devises in the will of equal force with one which standing alone would have created an estate tail. The court said:

"This expression ['I hereby desire and require that all my real estate . . descend to my children and their bodily heirs'] standing alone, and accorded the technical meaning which the ancient common law attached to it, would give each of the testator's children an estate tail, an estate seldom found in wills or deeds of Kansas real estate, and not very well understood except by lawyers skilled in the intricacies of the common law." (p. 475.)

Again in *Grossenbacher v. Spring,* 108 Kan. 397, 195 Pac. 884, the court conceded the validity of such an estate in Kansas and indicated wherein the estate created in that case was not an estate tail. And indeed what led the trial court astray in this case was the assumed analogy between the Grossenbacher case and the one at bar. It has thus been five times declared or recognized by this court that an estate tail can lawfully be created in Kansas. It can be created by will or by conveyance. Twice the matter has been called to the attention of the legislature in recent years. In 1911, house bill No. 430 was introduced by Mr. J. Will Kelley, of Shawnee county. It was entitled, "An act to convert estates in general or special tail into fee simple." This bill failed of passage. Again in 1913, senate bill No. 476 was introduced by Senator Troutman, of Shawnee county. It was entitled, "An act to abolish estates tail and convert them into estates in fee simple." This bill was favorably reported by the judiciary committee, but eventually was stricken from the calendar, March 5, 1913. This historical data is taken from the file of original bills and resolutions in the archives of the

secretary of state. As *Ewing v. Nesbitt* was decided on February 8, 1913, and that decision showed clearly that no conceivable mischief could reasonably be expected to flow from the existence of estates tail in Kansas (since the tenant in tail could get relief from any domestic or business hardship consequent upon the entailment, by his own act, a conveyance; without legislative assistance), the inference is strong that the legislature deliberately concluded that there was no good reason to abolish them.

· It is suggested in the motion for a rehearing that the rule in Shelley's case has no bearing on the question under discussion. Very true. In our first opinion reference was made to Shelley's rule expressly as a cautionary reminder to students of the subject that the prevalence, abolition or statutory modification of that rule might affect the decisions of analogous cases in other jurisdictions. Note, also, effect of various statutes on estates tail: 21 C. J. 936 *et seq.,* Brewster on Conveyancing, §§ 142, 143.

In one respect our original opinion may stand in need of correction. Some of the justices are inclined to hold that we stressed too much the point that a testator's intention cannot stand against a positive rule of law. Of course a testator's intention is never to be flouted, ·and where the text of a will leaves the testator's purposes in doubt, his intention is to be searched for and the will interpreted accordingly; and of course the testator's intention is to be gleaned from the whole body of the instrument. What the writer should have said, perhaps, is that the testator's primary and main intention was perfectly clear—a devise to his daughter for life and remainder to her issue if she married and had issue. The secondary intention, which more correctly should have been designated as a *direction,* was that the property should be managed by trustees during the life of Georgia. Instead of saying that .this secondary intention, more properly a direction, would have to yield to the positive and pertinent rules of law pertaining to and consequent upon the existence of an estate tail, it might have been more precise to say that any grant of power to the trustees, express or implied, and which was. inconsistent with the existence of the estate tail created by the will, was necessarily abortive and without effect. Thus, in *Albee, Administrator, v. Carpenter & another,* 66 Mass. (12 Cush.) 382, 386, the devise provided—

"Thirdly. I give and bequeath to Amey Albee, wife of Amory Albee, all the rest, residue, and remainder of my property, of whatever name or nature,

to her and her heirs. And if said Amey Albee die, without issue or heirs, it is my will and pleasure that the above-named Noah Carpenter and Ann Eliza Carpenter should have the last-mentioned property to them and their heirs forever, equally to be divided between them."

The court, speaking by Chief Justice Shaw, said:

"We are aware that the intent of the testator is the leading consideration in the construction of a will, and is to govern; but it is with this qualification, that it can be carried into effect, consistently with the rules of law. If it was the intention of the testatrix to give an estate to Mrs. Albee and her issue and descendants, if she should have any, then it was an estate tail in her as the first taker; and the further intention, that Carpenter and his sister should have it, after her decease, was contrary to the rules of law, and could not take effect, because it was to limit a gift of personal property to the determination of an estate tail, which the law does not admit." (p. 388.)

The above excerpt is quoted in reference to the consequences which flow from a conflict between the testator's intention and positive rules of law, not for any analogy between that case and the one at bar, although that itself may be discernible.

Looking at this question of intention from another angle, it must be presumed that Zimri Gardner knew the law of this state, knew that an estate tail could lawfully be created, and knew that such an estate could be broken by a conveyance if the convenience or necessities of the tenant in tail should so require. But notwithstanding that knowledge, he was pleased to create an estate tail for the benefit of his daughter and her possible but then unborn issue. Doubtless he hoped that no untoward circumstances would arise during his daughter's lifetime to require her to sever the entailment; and naturally, too, he hoped she would marry and have issue, children begotten of her body, to take the property he had accumulated after his daughter was through with it. But knowing also that his plans for his daughter's welfare and for her children yet unborn might go awry, he created an estate tail, which in urgent need she could break by a conveyance. We think that intention is fairly derivable from the testator's presumed knowledge of the law of his domicile.

Noting briefly other arguments of counsel, the court can draw no logical distinction leading to different legal consequences between a devise to Georgia for life and after her death to her issue, and a devise to Georgia and to her issue. In our original opinion we quoted from Blackstone (114 Kan. 781) that in wills, where great indulgence is permitted, an estate tail may be created by various

irregular modes of expression. So also, in *Doty v. Teller,* 54 N. J. L. 163, 165, it was, said:

"As the words 'heirs' is necessary to the creation of the fee simple by deed, so the additional word 'body,' or some other word of procreation, was necessary to create a fee tail by such an instrument. But in wills, where the cardinal rule of construction is that the testator's manifest intention shall prevail over all forms of expression, these correct and technical words have never been considered essential."

Counsel cite *Williams v. Haller,* 13 Ohio Nisi Prius Reports, n. s. 329, wherein it is held that a devise to Amanda Williams "for the term of her natural life and at her decease to go to the heirs of her body in fee" did not create an estate tail in Amanda, but an estate for life to her, with remainder to the issue of her body, under the court's interpretation of pertinent Ohio statutes.

On the other hand, no such particularity of form is noted as essential to the creation of an estate tail in the general run of decisions. *Quod communis error facit jus.* Thus in *Cecil v. Smith,* 44 Pa. Super. Ct. 274, a trust deed to real estate in favor of a wife, Ann Jones, "for and during her natural life," and "from and after the decease of the said Ann Jones, in trust for the heirs of the body of the said Ann Jones," was held to create an estate tail in Ann Jones, which the local statute transformed into an estate in fee simple.

In *Horton, Adm'r, v. Upham et al.,* 72 Conn. 29, the residuary clause of a will provided:

"I give and devise unto my grandson, Arthur H. Upham, the house and land situate in the town of Union, with all the out buildings situated thereon, together with all the rest of my goods and chattels and personal estates whatsoever. Provided, that at the death of said Arthur H. Upham the proceeds of the same shall be paid to the Congregational Ecclesiastical Society of Union Always provided that the said Arthur H. Upham leave no issue." (p. 30.)

This residuary clause was held to create an estate tail in the testator's grandson by implication.

In *Sheeley v. Neidhammer,* 182 Pa. St. 163, the headnote reads:

"A devise of realty to one for life with the right to the proceeds, without the right of alienation, and after his death to 'his children or legal heirs,' vests in the first taker an estate tail, which under the Pennsylvania statute becomes an estate in fee simple."

In *Beilstein v. Beilstein,* 194 Pa. St. 152, 75 A. S. R. 692, the language of the will was, "it is my desire that my daughter Gertie Beilstein shall receive the income of my property . . . so long

Gardner v. Anderson, *Trustee*.

as she lives, but should she die without leaving a family," then over to testator's brothers and sisters. The court said:

"We are, therefore, clearly of opinion that by the words 'die without leaving a family' the testator meant die without issue or heirs of her body, and under all our cases this refers to an indefinite failure of issue, which creates a fee tail in the first taker, enlarged to a fee simple by the statute."

In *King v. Johnson,* 117 Va. 49, the devise read:

"I give to my son Rufus all my real estate in the county of Westmoreland for and during his natural life, and should he die with a lawful heir, to his heir or heirs forever. But should he die without issue I give the said land to my son Alexander S. King, to him and his heirs forever."

This devise was treated, in part, as if it were an estate tail in form, but an early statute of Virginia (enacted October 7, 1776) converted every such fee tail into a fee-simple estate.

In the old case of *Keys & Heron v. Goldsborough,* 2 Md. 369, decided in 1809 (when lawyers and judges were more generally familiar with estates tail than they are now), the devise by Robert Heron under judicial consideration provided:

"I give and bequeath unto my dearly beloved son Cuthbert Heron, the free use of my land whereon I now live, called Ennall's inheritance, being by estimation about 300 acres, with all the houses and improvements thereon, during his natural life, to occupy and enjoy the same; and after the decease of my said son Cuthbert Heron, I give and bequeath the aforesaid lands called Ennall's inheritance, with all the houses and improvements thereon, unto the heirs of my said son Cuthbert Heron, lawfully begotten of his body, forever; and for want of such heirs, I give and bequeath the aforesaid lands called Ennall's inheritance, with the improvements thereon, unto my dearly beloved son Robert Heron, and the heirs of his body lawfully begotten, forever; and for want of such issue, to my dearly beloved son Charles Heron, and the heirs of his body lawfully begotten, forever; and for want of such issue, to my four daughters, to be equally divided amongst them, and the heirs of their bodies lawfully begotten, forever."

The opinion of the court, in part, reads:

"The defendants objected to the title claimed by the plaintiff, and contended that Cuthbert Heron, under the will of Robert Heron, took only an estate for life in the lands devised to him, and had no lawful power to make a conveyance of the said lands beyond his natural life. But the court (Robins, A. J.) was of opinion, and decided, that Cuthbert Heron took an estate in tail general in the lands devised to him by Robert Heron. . . . Judgment affirmed." (p. 372.)

In *Brownell v. Brownell,* 10 R. I. 509, Chief Justice Brayton stated a similar problem and its solution:

Gardner v. Anderson, *Trustee.*

"The devise upon which the question before us is raised is as follows:

" 'It is my will that the house I now own in Providence, together with the furniture, I give to my daughter, Lucia E. Brownell, during her life, and at her decease I bequeath it to her oldest male heir; but in case there should be no male heir, then the estate to be equally divided among her surviving heirs.'

"And the question submitted is, if the daughter took, under this devise, an estate tail in the premises, so that she could give a good title in fee, or took an estate for life only, the remainder to vest in her eldest male child.

"The estate here given to the daughter is to her during her life. This is all that is expressly given her. Is this life estate enlarged by force of the language following to an estate of inheritance?

"The rule of law is, that where, by the same instrument that gave the life estate, a limitation is made to the heirs generally of the devisee, his estate becomes thereby an estate in fee simple. If limited to the heirs of the body, his estate is enlarged to an estate in fee tail, and by the same rule, if limited to the heirs male of his body, or to the heirs female of his body, the devisee takes an estate in special tail, according as the limitation be to male or female heirs, and according to Coke, 1 Inst. 22, the limitation may be still more special, as to one of the heirs male. . . .

"We are of opinion that the said Lucia E. Brownell took an estate tail by this devise." (p. 512, 514. See, also, *Murdock et al. v. Shackleford,* 17 Fed. Cas. 1008; *Osborne v. Shrieve,* 18 Fed. Cas. 859.)

An illuminating English case on this subject is *Bowen v. Lewis,* 9 App. Cas. 890, where a testatrix (who died in 1820, prior to the enactment of various British statutes affecting the subject) devised to her son Thomas all her real and freehold estate "during the term of his natural life, and after his decease to his legitimate child or children (if there be any) ; but if he dies without issue my will is it may go unto my other son, William, during the term of his natural life, and afterwards to his legitimate child or children (if any) ; but if he should likewise die without issue my will is it may go to my daughter Mary and to her heirs and assigns forever." The trial court held that Thomas took an estate tail. The court of appeal affirmed the judgment. The appeal was twice argued before the house of lords, and a majority of that tribunal affirmed the decision of the court of appeal.

The demands upon this court will not permit that this interesting theme be further pursued. But see, Littleton's Tenures, edited by Professor Wambaugh (1903), Byrne & Co., p. 7 *et seq;* Sheppard's Touchstone (1785), 222 *et seq.;* I Coke upon Littleton (1st Am. ed. 1853), L. 1, C. 2, § 13; 2 Preston on Estates, 355, 537, *et seq.;* 40 Cyc. 1597 *et seq.;* 10 R. C. L. 656 *et seq.;* 21 C. J. 931 *et seq.*

Our decision reversing the judgment of the trial court is adhered to.

MASON, J. (concurring specially): By the foregoing opinion the section of the statute which is sometimes spoken of as abolishing the rule in Shelley's case so far as wills are concerned (R. S. 22-256) is confined in its operation to wills giving land to a life tenant and upon his death literally to his "heirs in fee." I concur in this interpretation of the section, although with a doubt whether by a liberal but permissible construction it might not be extended to cover as well wills giving the land upon the life tenant's death to his bodily heirs.

It is to be observed that while the will described the title taken by the daughter as a life estate only, it indicates that the thought of inheritance on the part of her issue was in the mind of the testator by the language, "at her death my property shall *descend* to them."

I do not fully agree with the original opinion (114 Kan. 778, 784, 227 Pac. 743) as to the effect of the provision that in the event of the daughter having no issue the property should "revert to the Gardner estate." That I take to mean that it should go to the person or persons constituting the heirs of the testator at the time of his death. And by what appears to be the weight of authority the daughter would not be excluded (Notes, 20 A. L. R. 351; 13 A. L. R. 608), and being his sole heir, would by that clause acquire the full title unless she has issue.

JOHNSTON, C. J., and HOPKINS, J., dissenting.
BURCH, J., not sitting.