(337 P.3d 705)

No. 111,344

STATE OF KANSAS, *Appellant*, v. SHERRY L. HASKELL, *Appellee*.

Opinion filed October 31, 2014.

*Patrick J. Hurley*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Adam M. Hall*, of Collister & Kampshroeder, of Lawrence, for appellee.

Before LEBEN, P.J., ARNOLD-BURGER, J., and DANIEL L. LOVE, District Judge, assigned.

ARNOLD-BURGER, J.: The crime of unlawfully hosting minors is described by statute as recklessly permitting a person's residence to be used by an invitee or an invitee of the person's child in a manner that results in the unlawful possession or consumption of alcoholic liquor or cereal malt beverage by a minor. K.S.A. 2013 Supp. 21-5608(a). Sherry L. Haskell's daughter threw a house party where a number of minors consumed alcohol. Haskell attended the party, serving as the disc jockey, dancing, and drinking with the minors. The State charged her with unlawfully hosting minors consuming alcohol under K.S.A. 2013 Supp. 21-5608. Haskell moved to dismiss, arguing that the legislature's use of the word invitee—a word that, in the field of tort law, refers to a business visitor—rendered the statute inapplicable. The district court agreed and dismissed the charge, and the State appeals. Because we find that the common meaning of the word invitee is "one who is invited," we reverse the district court's decision and remand the case for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

In June 2013, Haskell allowed her daughter to throw a party at her home in Baldwin, Kansas. An unknown number of young people attended this party, where they drank alcohol while Haskell acted as the party's disc jockey and also drank. Although the record fails to reveal the ages of the guests, the parties generally acknowledge that one or more of the young people at the party were not yet 21 years old when they consumed alcohol and that Haskell knew their ages. As the party progressed, a can of either gas or oil tipped into the campfire at the residence. When one of the young men at the party attempted to pull the can out, it exploded, and he sustained burns to his head and torso. His mother contacted the police, who investigated the party. Consequently, the State charged Haskell with one count of unlawfully hosting minors consuming alcoholic liquor or cereal malt beverage, a class A person misdemeanor.

Shortly thereafter, Haskell filed a motion to dismiss the charge, arguing that the State could not sustain a charge under K.S.A. 2013 Supp. 21-5608 due to the statute's plain language. Specifically,

Haskell argued that the word invitee, which appears in the statute, possesses a very specific and narrow definition under the law— namely, that invitees are business visitors rather than social guests. Because the young people at her home were social guests, she argued the statute did not apply. In response, the State contended that the word invitee simply referred to anyone invited onto property and, therefore, applied to the social guests of Haskell's daughter. The State also argued that Haskell's more narrow definition of *invitee* appears only in tort law and is thus inapplicable to criminal statutes and proceedings.

After hearing argument on the motion, the district court agreed with Haskell, holding that the precise legal meaning of the word invitee excludes social guests. The district court also noted that our Kansas statutory construction statute, K.S.A. 2013 Supp. 77-201, requires that " 'words and phrases that have acquired a peculiar and appropriate meaning in law' " be construed in accordance with that peculiar and appropriate meaning. As such, the district court dismissed the charge against Haskell.

The State moved the district court to reconsider its ruling, where it objected to how narrowly the district court interpreted the statute. In her response to the motion, Haskell rejected the State's reading of K.S.A. 2013 Supp. 21-5608; she also argued that the statute's ambiguities required the district court's narrower construction. The district court considered arguments on the motion to reconsider but ultimately upheld its initial ruling. The district court explained its reasoning as follows:

"I think, to me, what clearly has happened is the person who wrote this statute didn't understand that the word invitee did not mean a social guest. Sounds like it. They are an invited person. Invitee sounds like, 'I invited you over.' Invitee has a very specific, legal meaning, and it doesn't mean social guest. It means a person you have invited to your place of business, not one-on-one . . . . This statute should just read that 'to be used by a person who was invited.' That is the plain and simple, normal language. But once you add 'invitee,' they have totally transformed this statute into something that the legislature, I know, did not mean for it to mean . . . . [B]asically they are prohibiting you from telling people to come over and buy a cup, a red Solo cup for $5, which would make you an invitee, and then let you drink, while you are underage, however much you want, for that $5 out of the keg at their party."

The district court memorialized this decision in a journal entry, and the State timely appealed the dismissal of the charge.

ANALYSIS

The sole issue on appeal is whether the district court erred in dismissing the charge against Haskell. Central to this question is the definition of the word invitee as it appears in K.S.A. 2013 Supp. 21-5608. The State contends that the word should be construed according to its common usage, but Haskell maintains that it carries a particular legal definition and must be interpreted accordingly.

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Dale*, 293 Kan. 660, 662, 267 P.3d 743 (2011). The most fundamental rule of statutory interpretation is that the intent of the legislature governs if that intent can be ascertained. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). In uncovering this intent, an appellate court must first examine the statutory language enacted and give common words their ordinary meanings. Where there is no ambiguity in the statutory language, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the legislature's intent. *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010).

The particular statute at issue in this case is K.S.A. 2013 Supp. 21-5608(a), which reads:

"Unlawfully hosting minors consuming alcoholic liquor or cereal malt beverage is recklessly permitting a person's residence or any land, building, structure or room owned, occupied or procured by such person to be used by an invitee of such person or an invitee of such person's child or ward, in a manner that results in the unlawful possession or consumption therein of alcoholic liquor or cereal malt beverages by a minor."

The outcome of this case hinges on the definition of *invitee*. Haskell contends that the tort-law definition must apply to this case. In the field of tort law, an invitee is "[s]omeone who has an express or implied invitation to enter or use another's premises, such as a business visitor or a member of the public to whom the premises are held open." Black's Law Dictionary 955 (10th ed.

2014); see also *Jones v. Hansen*, 254 Kan. 499, 503, 867 P.2d 303 (1994) (" 'An invitee is one who enters or remains on the premises of another at the express or implied invitation of the possessor of the premises for the benefit of the inviter, or for the mutual benefit and advantage of both inviter and invitee.' "). A social guest, on the other hand, is generally considered a licensee, or "[s]omeone who has permission to enter or use another's premises, but only for one's own purposes and not for the occupier's benefit." Black's Law Dictionary 1061 (10th ed. 2014); see also *Jones*, 254 Kan. at 503 (" 'A licensee is one who enters or remains on the premises of another by virtue of either the express or implied consent of the possessor of the premises, or by operation of law, so that he [or she] is not a trespasser thereon.' "). Although Kansas no longer treats invitees and licensees differently when considering the duty of care owed to guests by a landowner, they remain two distinct categories under the law. See *Jones*, 254 Kan. at 509. Clearly, *invitee* is imbued with a peculiar and appropriate meaning in the field of premises liability and tort law.

Applying these definitions to K.S.A. 2013 Supp. 21-5608(a) transforms it into the following:

> "Unlawfully hosting minors consuming alcoholic liquor or cereal malt beverage is recklessly permitting a person's residence or any land, building, structure or room owned, occupied or procured by such person to be used by [*a business visitor*] of such person or [*a business visitor*] of such person's child or ward, in a manner that results in the unlawful possession or consumption therein of alcoholic liquor or cereal malt beverages by a minor." (Emphasis added.)

Interpreted that way, the district court's red Solo cup hypothetical is accurate, and the only individuals at risk of criminal prosecution under the statute are those parents or landowners who allow either their children or renters to sell cups (or alcoholic drinks) to minors.

But *invitee* also carries another, more common meaning. As Bryan Garner notes, "[a]lthough nonlawyers might assume that an *invitee* is someone expressly invited onto property, lawyers use the term to include those who have implied permission to enter the premises." Garner's Dictionary of Legal Usage 482 (3d ed. 2011). Other dictionaries agree, defining *invitee* as "[o]ne that is invited,"

and *invite* as "[t]o ask for the presence or participation of" or "[t]o welcome." The American Heritage Dictionary 923 (5th ed. 2011). Applying these definitions, the statute instead reads:

"Unlawfully hosting minors consuming alcoholic liquor or cereal malt beverage is recklessly permitting a person's residence or any land, building, structure or room owned, occupied or procured by such person to be used by [*someone asked to that location by*] such person or [*someone asked to that location by*] such person's child or ward, in a manner that results in the unlawful possession or consumption therein of alcoholic liquor or cereal malt beverages by a minor." (Emphasis added.) K.S.A. 2013 Supp. 21-5608(a).

This reading of the statute clearly applies to the instant facts: Haskell's daughter asked the minors to attend the party at Haskell's home, and Haskell recklessly allowed those minors to possess or consume alcohol.

At first blush, it appears that this statute must be ambiguous, as two reasonable interpretations exist. See *Board of Trustees of Butler Co. Comm. College v. Board of Sedgwick Co. Comm'rs*, 257 Kan. 468, 476, 893 P.2d 224 (1995). However, this alleged ambiguity only arises because Haskell selectively applies one canon of construction while ignoring all others. In fact, a brief analysis demonstrates that the statute is not ambiguous at all.

One of the most fundamental principles of statutory interpretation is that "[w]ords are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense." Scalia & Garner, Reading Law: The Interpretation of Legal Texts 69 (2012). According to our Kansas Supreme Court, "ordinary words are to be given their ordinary meaning and courts are not justified in disregarding the unambiguous meaning," and "[i]t is presumed the legislature understood the meaning of the words it used and intended to use them . . . in their ordinary and common meaning." *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, Syl. ¶¶ 7-8, 834 P.2d 368 (1992). In fact, K.S.A. 2013 Supp. 77-201, which controls Kansas' rules of statutory construction, reinforces this principle. Specifically, "[w]ords and phrases shall be construed according to the context and the approved usage of the language, but technical words and phrases, and other words and phrases that have acquired a peculiar and appropriate meaning in

law, shall be construed according to their peculiar and appropriate meanings." K.S.A. 2013 Supp. 77-201 *Second.* However, this rule—like all Kansas' rules of statutory construction—shall not be observed when it leads to a construction that "would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute." K.S.A. 2013 Supp. 77-201.

Haskell champions the last portion of K.S.A. 2013 Supp. 77-201 *Second,* arguing that the *business visitor* definition of invitee is its " 'peculiar and appropriate meaning in law.' " Unsurprisingly, few cases grapple with the final phrase of this subsection. In *State v. Fultz,* 24 Kan. App. 2d 242, 246-47, 943 P.2d 938, *rev. denied* 263 Kan. 888 (1997), this court observed that *adjudication* and *disposition* are "terms of art within the Code for the Care of Children" and carry specific meanings. When required to interpret a will, our Supreme Court held on rehearing that *heirs in fee* and *issue* "have long possessed a peculiar and appropriate meaning in law." *Gardner v. Anderson, Trustee,* 114 Kan. 778, 227 P. 743 (1923), *reh. granted* 116 Kan. 431, 435, 227 P. 743 (1924), *disapproved on other grounds by Morehead v. Goellert,* 160 Kan. 598, 164 P.2d 110 (1945). Other words or phrases that this court or our Supreme Court have termed "peculiar and appropriate" under K.S.A. 2013 Supp. 77-201 *Second* include *pending, proceeding, probable cause,* and *charge.* See *Rose v. Via Christi Health System, Inc.,* 279 Kan. 523, 527, 113 P.3d 241 (2005); *Foos v. Terminix,* 277 Kan. 687, 696, 89 P.3d 546 (2004); *State v. Gamble,* 20 Kan. App. 2d 684, 686-87, 891 P.2d 472, *rev. denied* 257 Kan. 1094 (1995). Although not a legal term, this court in *In re Application of Riverton Water Co. for Tax Exemption.,* 23 Kan. App. 2d 496, 499, 932 P.2d 452, *rev. denied* 262 Kan. 961 (1997), determined that "[r]ural water district' " constituted a technical term for the purposes of statutory interpretation. But not all words qualify as either technical or peculiar and appropriate. For example, in *In re Vanderblomen,* 264 Kan. 676, 681-83, 956 P.2d 1320 (1998), our Supreme Court rejected the argument that " 'organic mental disorder' " constituted a technical term that lost its meaning when the DSM-IV abandoned it. *Contemporaneous* is a word of common usage, as well. *Foos,* 277 Kan. at 696.

Based on these cases, it may well be that *invitee* possesses a peculiar and appropriate meaning in the area of tort law. But Haskell's argument overlooks the mandate that a court must apply the common meaning of the word *invitee*. *Boatright*, 251 Kan. 240, Syl. ¶ 7. Moreover, she also disregards the requirement that courts must construe statutes to avoid unreasonable or absurd results. *State v. Turner*, 293 Kan. 1085, 1088, 272 P.3d 19 (2012). In fact, our Supreme Court has cautioned against applying K.S.A. 77-201 *Second* too stringently, explaining: "This particular element of the statute is not to be singled out and applied to the exclusion of all other rules of statutory construction which must also be considered and given appropriate weight." *Southwestern Bell Tel. Co. v. Kansas Corporation Commission*, 233 Kan. 375, 381, 664 P.2d 798 (1983). Disregarding the other rules of statutory interpretation to apply the extraordinarily narrow tort-law definition of *invitee* runs afoul of these principles.

If any doubt as to the meaning of *invitee* remains after applying the foregoing principles, the legislative history of K.S.A. 2013 Supp. 21-5608 demonstrates that the legislature intended the word to carry its ordinary meaning. The statute was first introduced during the 2003 legislative session as House Bill 2319. House J. 2003, p. 140. At approximately the same time, the Senate introduced Senate Bill 197, which attempted to curb underage drinking in a number of other ways. Sen. J., p. 92. Before the end of the session, senators amended the bill to include language very similar to House Bill 2319. Sen. J. 2003, p. 369-70. When Senate Bill 197 moved to the House during the 2004 legislative session, the House struck the amendment and inserted House Bill 2319 in its place, and the legislation passed as amended. House J. 2004, p. 1081-82.

Throughout this process, the testimony provided in committee unambiguously demonstrated that the purpose of House Bill 2319 and the amendments to Senate Bill 197 was to impose criminal liability on adults who allowed minors to host house parties and consume alcohol on their property. Nothing in the testimony even remotely suggests that the legislature intended the law to apply to individuals whose business visitors allowed minors to consume alcohol; instead, the bill focused entirely on parents who either allow

minor social guests to drink on their property or remain willfully ignorant to it.

Because the legislature is assumed to know and intend a word's ordinary meaning, courts engaged in statutory interpretation are required to apply that ordinary meaning unless the context requires a more technical term. See *Boatright*, 251 Kan. 240, Syl. ¶¶ 7-8; Scalia & Garner, Reading Law: The Interpretation of Legal Texts 69 (2012). Moreover, our statutory construction statute requires that its rules be observed "unless the construction would be inconsistent with the manifest intent of the legislature." K.S.A. 2013 Supp. 77-201. The legislature clearly intended for K.S.A. 2013 Supp. 21-5608 to apply to this exact situation: a parent who allows a minor child to invite his or her minor friends over and who then allows those friends to drink.

The district court recognized this purpose but chose to (1) focus too intently on K.S.A. 2013 Supp. 77-201 *Second* and tort law, (2) ignore other interpretive principles, and (3) define *invitee* too narrowly. As the foregoing analysis shows, the word invitee is, in the context of K.S.A. 2013 Supp. 21-5608, unambiguously defined as *one who is invited*—and, as such, applies to the facts of Haskell's case.

As a final note, Haskell argues that even if the ordinary definition of invitee applies in this case, the rule of lenity requires that the statute's ambiguity be resolved in her favor—and in favor of the narrower tort-law definition. The rule of lenity requires a court to strictly construe ambiguous criminal statutes in favor of the accused. *State v. Horn*, 288 Kan. 690, 693, 206 P.3d 526 (2009). But as previously discussed, the ambiguity in this case is an artificial one that stems from employing rules of statutory construction far too narrowly. Because no true ambiguity exists, the rule of lenity is inapplicable.

In sum, the district court erred in dismissing the charge against Haskell, and its decision is reversed and remanded for further proceedings.

Reversed and remanded.