No. 71,023

BOARD OF TRUSTEES OF BUTLER COUNTY COMMUNITY COLLEGE, *Appellant/Cross-Appellee,* v. BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK, *Appellee/ Cross-Appellant.*

(893 P.2d 224)

Opinion filed April 21, 1995.

*Paul B. Swartz,* of Martin, Pringle, Oliver, Wallace & Swartz, of Wichita, argued the cause, and *Kathryn Gardner* and *Michael G. Jones,* of the same firm, were with him on the briefs for appellant/cross-appellee.

*Susan R. Schrag,* of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Jana D. Abbott* and *Thomas R. Docking,* of the same firm, were with her on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

LOCKETT, J.: A community college appeals the district court's ruling on summary judgment that (1) out-district tuition is not chargeable to a county for classes taught at a military base; and (2) the defenses of estoppel and waiver by payment, laches, and unjust enrichment were inapplicable to the county's counterclaim for reimbursement. The county cross-appeals the district court's ruling that (1) the statutory penalty in K.S.A. 19-232 does not apply to charges it previously paid; (2) the county is not entitled to prejudgment interest; and (3) the community college is entitled to judgment for out-district tuition due for classes not taught on a military base. This case was transferred to this court pursuant to K.S.A. 20-3018(c).

Since 1974, Butler County Community College (BCCC) has contracted with and taught community college courses at McConnell Air Force Base (McConnell), a federal enclave situated in Sedgwick County. BCCC submitted requests for approval of out-district instruction to the State Board of Education (State Board). After obtaining the State Board's approval, BCCC charged and collected out-district tuition from counties whose residents took BCCC's courses. See K.S.A. 71-301 and K.S.A. 71-607. From 1974 until 1992, BCCC billed and received payment from the Sedgwick County Board of County Commissioners (Sedgwick County) for out-district tuition for civilian Sedgwick county residents attending BCCC's classes, wherever located.

In the spring of 1992, Sedgwick County refused to pay the out-district tuition billings sent by BCCC for the Fall-Mini 1991 se-

mester and the Spring 1992 semester. In April 1992, BCCC filed suit against Sedgwick County to collect the out-district tuition due from Sedgwick County. Sedgwick County denied it was obligated to pay and counterclaimed for a credit and offset for tuition BCCC had previously improperly collected. During the pendency of the action, Sedgwick County continued to refuse to pay out-district tuition to BCCC. Accordingly, as semesters or terms passed, BCCC filed amended petitions seeking additional payment of out-district tuition from Sedgwick County.

From 1974 through the fall of 1991, the out-district tuition billings sent to Sedgwick County combined the McConnell and non-McConnell classes into a single statement without indicating that McConnell classes were included in the bill or the location where the classes were taught. The only detail furnished with the summary page containing the amount due was an alphabetical listing of the Sedgwick County students, the identification number for each student, the address of each student, and credit hours taken by each student. Sedgwick County paid the tuition bills without knowledge that McConnell charges were included. Because of the billing procedure for out-district tuition, it was during pretrial discovery that Sedgwick County became aware that BCCC had been teaching courses at McConnell since 1974 and had charged Sedgwick County out-district tuition for those courses.

The total amount sought by BCCC in its lawsuit was $1,695,225 for the Fall-Mini 1991 through Spring-Mini 1993 semesters. Of this amount, $436,145 was for McConnell classes and $1,259,080 was for non-McConnell classes.

In response to BCCC's motion for summary judgment and Sedgwick County's motion for partial summary judgment, the district court held that BCCC was not entitled to collect out-district tuition for Sedgwick County civilian residents attending classes at McConnell. Thereafter, Sedgwick County amended its counterclaim to obtain reimbursement for BCCC's wrongful collection of out-district tuition. In the amended counterclaim, Sedgwick County claimed that BCCC was not entitled to out-district tuition for classes taught at McConnell because BCCC had failed to ob-

tain permission to teach the classes from Wichita State University (WSU). It requested an offset against whatever sums BCCC might recover for Sedgwick County's nonpayment of out-district tuition after the fall 1991 semester. BCCC answered defendant's amended counterclaim raising numerous affirmative defenses, including statute of limitations, waiver, laches, equitable estoppel, and voluntary payment.

Prior to trial, the parties stipulated to the amount of out-district tuition in dispute for civilian Sedgwick County residents educated at McConnell. Sedgwick County then dismissed all of its counterclaims except repayment of McConnell out-district tuition and payments. After a one-day trial, the court found that Sedgwick County was not aware the tuition bills submitted by BCCC included out of district charges for McConnell classes and was entitled to reimbursement of $2,858,201 for the McConnell charges previously paid to BCCC. The court also found that: (1) the unpaid non-McConnell charges from Fall-Mini 1991 through Spring-Mini 1993 totalling $1,259,080 were due and owing to BCCC and (2) Sedgwick County was not liable for the unpaid McConnell charges totalling $436,145. The court found each of BCCC's equitable defenses were inapplicable to a governmental entity. The district court granted Sedgwick County a judgment of $1,599,120. The district court refused to impose the 100% penalty of K.S.A. 19-232 or to assess prejudgment interest against BCCC.

BCCC appeals the district court's findings that out-district tuition is not properly chargeable to Sedgwick County for classes taught at McConnell and that equitable defenses are inapplicable to governmental entities. Sedgwick County cross-appeals (1) the district court's ruling that K.S.A. 19-232 does not apply to Sedgwick County's recovery of the McConnell charges previously paid; (2) the denial of prejudgment interest; and (3) the judgment for out-district tuition for the non-McConnell classes.

## Standard of Review

The facts are not in dispute. We are determining the statutory right of a community college to collect out-district tuition. This

court's review of that question of law presented is de novo. See *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991). Each argument relevant to that issue is addressed separately.

### Federal Supremacy

Sedgwick County argued that because the State ceded the land to the United States in 1953, out-district tuition statutes enacted by the State in 1965 cannot provide BCCC with a basis for out-district tuition for classes taught at McConnell. BCCC contended that an analysis of federal supremacy was unnecessary because application of federal law is not required and the act giving rise to the lawsuit, Sedgwick County's failure to pay out-district tuition, did not occur on the federal enclave. The district court determined that the federal supremacy doctrine did not apply under these circumstances. Sedgwick County raises the issue of federal supremacy on appeal.

Under the federal supremacy doctrine, where there exists a conflict between federal and state law, federal supremacy requires the application of federal law rather than state law. With respect to federal enclaves situated within the boundaries of the state of Kansas, only federal law and such Kansas law (not in conflict with federal law) in effect at the time of the establishment of the federal enclave is applicable to the activities and operation within such federal enclaves. An exception to the rule exists if subsequently enacted Kansas law is specifically adopted or made applicable by an act of Congress. *Orlovetz v. Day & Zimmerman, Inc.*, 18 Kan. App. 2d 142, Syl., 848 P.2d 463 (1993).

In October 1953, the State of Kansas ceded to the United States the territory comprising McConnell. The United States accepted exclusive jurisdiction over the McConnell property, and it has remained a federal enclave since that time. The Kansas statutes regarding the payment of out-district tuition were first enacted in 1965. Sedgwick County asserts that these Kansas statutes have no application to classes taught at McConnell because of the "firmly established constitutional principle that activity on a federal enclave is governed by the laws of the United States, and not by the laws of the state in which such enclave is located

unless those laws were in effect at the time the territory was ceded to the federal government."

The collection of out-district tuition from Sedgwick County residents taught on a federal military reservation does not impinge upon the acts and operations of the United States government. BCCC's right of action arose when Sedgwick County refused to pay out-district billings approved by the State Board; therefore, Kansas law, not federal law, must be applied in determining the claims of each party. The district court's conclusion that under the circumstances of this case no conflict between federal and state law exists is correct.

*Express Statutory Authorization*

Sedgwick County asserts that authorization for community college courses to be taught on a federal enclave is statutory. It points out that K.S.A. 71-205 authorizes community colleges to offer courses at Fort Leavenworth military reservation and notes there is no specific statutory authority for a community college to offer classes at McConnell. Sedgwick County concludes that if there is no statutory authority for BCCC to teach classes on a federal enclave other than Fort Leavenworth, it cannot collect out-district tuition for classes taught at McConnell.

BCCC responds that the statutory authority for community colleges to offer off-campus instruction at Fort Leavenworth was enacted in 1968, prior to the enactment of K.S.A. 71-607(a), K.S.A. 71-609(a), and K.S.A. 71-610, which authorize any community college to teach courses outside its own community college district. BCCC maintains that its offering classes at McConnell is within the broad statutory grant of power set forth in K.S.A. 71-201(b)(3) (authority to determine the educational program of its college subject to prior approval of the State Board); 71-201(b)(7) (authority to enter into contracts); and 71-201(b)(14) (authority to exercise all other powers not inconsistent with the provisions of law or with the rules and regulations of the State Board).

At the time McConnell became a federal enclave in 1953, there was no legislation relating to out-district tuition, nor had the leg-

islature established the community colleges. We note that in 1965 the board of trustees of a community junior college had the power to sue and be sued and enter into contracts. K.S.A. 71-201(2) and (7). The legislature provided for persons who are in active military service of the United States and their dependents to be admitted to a community college. K.S.A. 71-302(b)(1). The board of trustees of a community college is allowed to charge tuition to each student who resides within a federal military reservation. K.S.A. 71-301(a)(3).

Since 1974, BCCC has had a contract with McConnell to teach classes within the federal enclave. Under the contract, civilians (non-military personnel or their dependents) could participate in the courses on a space-available basis. Each contract between BCCC and McConnell has been submitted to and approved by the State Board. We conclude that BCCC has statutory authority and a valid contract to teach classes on a federal military reservation.

### Out-District Tuition

Does BCCC have statutory authority to collect out-district tuition for Sedgwick County civilians who attend classes taught off the main campus of the community college on a federal military base, out of the community college's taxing district, and in Sedgwick County?

In his memorandum decision, the district judge found that BCCC had offered classes at McConnell without soliciting or obtaining approval for the classes from Wichita State University (WSU). The judge concluded because BCCC failed to obtain approval from WSU, it was not entitled to collect out-district tuition from Sedgwick County for its residents attending the classes at McConnell. As authority for the decision, the judge cited the State Plan for fiscal years 1990-1991 and K.S.A. 71-609(b). A review of the constitutional and statutory provisions of the law, the purpose of the State Plan, and the history of community colleges is warranted to obtain a basic understanding of this action.

Under the Kansas Constitution, the legislature is to provide for intellectual, educational, vocational, and scientific improvement

by establishing and maintaining public schools, educational institutions and related matters. The legislature is required to make suitable provisions for financing the educational interests of the state. Kan. Const. art. 6, § 1 and § 6(b).

Over 60 years ago, acting under authority of these constitutional provisions, the Kansas Legislature authorized the establishment of junior colleges having a two-year course of post-high school study. See R.S. 1923, 72-3301 *et seq.* "Junior colleges" and "community junior colleges" became "community colleges" pursuant to a statute enacted in 1980. K.S.A. 71-120. The board of trustees of a community college has the power to sue and be sued, and to enter into contracts. K.S.A. 71-201(b)(2) and (7). These community colleges generally have as a tax base a taxing district consisting of one county or less, and the board of trustees of each community college is authorized to levy a tax on the taxable tangible property of the community college district. K.S.A. 71-204. In order to provide additional financial assistance to the community colleges, the legislature authorized each community college, under certain circumstances, to charge and collect in-state tuition (which includes persons who are in active military service of the United States, their spouses and dependents), out-of-state and foreign student tuition, and out-district tuition for each student attending the college whose residence is outside the community college district. Out-district tuition is paid by the board of county commissioners of the county of residence of the students who live outside of the community college district. K.S.A. 71-301. See *State ex rel. Stephan v. Board of Lyon County Comm'rs*, 234 Kan. 732, 676 P.2d 134 (1984).

### State Plan

The district judge found that BCCC had failed to comply with the State Plan for Community Colleges (State Plan), K.S.A. 71-1001 *et seq.*, as one basis for granting partial summary judgment to Sedgwick County. The only State Plan included in the record is a portion of the State Plan for Fiscal Years 1990-1991, which states in part:

"4. Instructional activities will not be approved in counties in which a Regents' university or a municipal university are located, unless:

(a) The community college has official written permission granted by the appropriate administrator of the Regents' institution in question.
(b) The community college has a valid contract with a governmental agency for the provision of educational services in the county in question, and a copy of such contract is on file with the director of the Community Colleges Section of the State Department of Education."

The language in 4(a) and (b) is not connected by "and" or by "or."

Sedgwick County argued that the State Plan for fiscal years 1990-1991 provides two requirements that must be met before instructional activities based on a contract with a federal agency can be approved for the collection of out-district tuition in a county in which a regents university or a municipal university is located. It claims that a liberal construction of statutes in order to effectuate their purpose is the established policy of this court. The function of liberal construction is called into use where there is ambiguity in the language of the statute or, in other words, where there are one or more interpretations which may fairly be made. *State ex rel. Stephan v. Martin,* 230 Kan. 747, 752, 641 P.2d 1011 (1982); *Russell v. Cogswell,* 151 Kan. 793, 795, 101 P.2d 361 (1940).

Sedgwick County concludes that, reading the provisions of the State Plan in the context of K.S.A. 71-1002, it appears that the purpose of the restriction is to control unnecessary duplication and expense which would result from allowing tax-supported community colleges and tax-supported regents institutions to offer the same courses in the same county. The district judge found Sedgwick County's analysis of the State Plan to be correct.

BCCC argues that the State Plan for fiscal years 1990-1991 provides two alternative methods by which instructional activities can be approved in a county in which a regents university or a municipal university is located. BCCC asserts that Kansas has long recognized the rule of statutory construction requiring a presumption that the legislature intended a statute to be given a reasonable construction so as to avoid unreasonable and absurd results. *Todd v. Kelly,* 251 Kan. 512, 515, 837 P.2d 381 (1992); *State v. Rowe,* 18 Kan. App. 2d 572, 574, 856 P.2d 1340, *rev. denied* 253 Kan. 863 (1993). BCCC concludes that Sedgwick

County's interpretation would require any community college desiring to offer courses in Ellis, Riley, Douglas, Lyon, Sedgwick, Crawford, or Saline Counties not only to have official written permission granted by the chief executive officer of each regents institution in those counties, but also to have a valid contract with a governmental agency for the provision of educational services on the federal enclave in such county. This would put the community colleges in the untenable position of seeking out some governmental agency in the county to rubber-stamp its provision of courses there, even though the regents institution president had already expressly approved them. It asserts such an interpretation makes no sense. BCCC contends that it had a valid contract to teach classes with a governmental agency, *i.e.*, the United States Air Force. BCCC notes that the contract had been reviewed and approved by the Kansas State Department of Education for the credit hours Sedgwick County was billed; therefore, it had complied with 4(b) of the State Plan.

To answer this issue, it is necessary to understand the purpose of the State Plan. The State Plan is a plan adopted for community colleges required by law. From time to time the plan may be amended by the State Board upon recommendation of the advisory council. The State Plan takes into account the institutions and facilities within the state, both public and private, to which the State or any of its subdivisions may be entitled to send students for education; present and projected needs of the State for expansion or alteration of existing institutions and for additional institutions; cultural, social, economic, and school attendance practices; and the need to provide at least two years of post high school education within reasonable commuting distance of all high school graduates in the state. K.S.A. 71-1002. The plan may include other matters listed in the Community College Act. K.S.A. 71-701(e); K.S.A. 71-1001.

The State Plan divides the state into areas; sets standards, criteria, and policies governing the approval, establishment, operation, development, and accreditation of community colleges; makes recommendations to the legislature for the future development of community colleges; and is developed to provide for

the offering of courses in the community colleges. K.S.A. 71-1003. See K.S.A. 71-701(e).

Interpretation of the State Plan is a question of law reviewable de novo. The function of the court is to give the State Plan such effect as is consistent with the intent of the legislature. Such intent may be determined from a general consideration of the entire act. *McGranahan v. McGough*, 249 Kan. 328, 334, 820 P.2d 403 (1991). The rule that reasonable interpretations of statutes and regulations are to be favored over unreasonable interpretations also applies to interpretation of the language in the State Plan.

The State Plan for fiscal years 1990-1991 must be read in conjunction with the state statutes existing during the term of the plan. Under the 1990-1991 State Plan there are two methods for a community college to teach classes and courses in Sedgwick County. Section 4(a) allows instructional activities in a county in which a regents university or a municipal university is located if approved by the appropriate administrator of the university. As to 4(b), we note that the board of trustees of a community college has the power to sue and be sued and enter into contracts. K.S.A. 71-201(b)(2) and (7). Persons who are in active military service of the United States and their dependents are to be admitted to a community college. K.S.A. 71-302(b)(1). Section 4(b) of the State Plan is a method of providing instructional activities based on the statutory authority of a community college to enter into a contract to teach classes and courses for the governmental authority.

We disagree with Sedgwick County's analysis of the purpose of the State Plan. The State Plan sets out the educational needs of the state and the goals that are to be accomplished by the community colleges. K.S.A. 71-1001 *et seq.* How those goals are to be funded are not included in K.S.A. 71-1001 *et seq.* but are set out in other statutes.

### Community College Funding

BCCC claims that the district court erred in denying out-district tuition by relying on K.S.A. 71-609(b). It points out that 71-609(b) was not enacted until July 1, 1992, and concludes that

WSU's approval was not required to collect out-district tuition prior to 1992.

To assist in funding, each community college is entitled to receive out-district state aid payments. The board of trustees, in accordance with rules and regulations of the State Board, determines an amount of out-district tuition to be charged for each out-district student attending the community college. From reports and information provided by each community college, and additional audits and investigations conducted by the State Department of Education, the State Board determines the amount of out-district tuition each community college is entitled to bill to counties each year. K.S.A. 71-607(a).

The board of county commissioners of any county charged with payment of out-district tuition is required to levy a tax on all of the taxable property of the county sufficient to pay all out-district tuition charges. The proceeds are deposited in a special fund for payment of out-district tuition. Upon receiving a statement of charges for out-district tuition, the board of county commissioners is required to promptly pay the out-district tuition from the special fund. If there is insufficient or no money in the special fund, out-district tuition is to be paid from the county general fund or from the proceeds of the sale of no-fund warrants issued for the purpose of the payment of out-district tuition. K.S.A. 71-301(b).

Prior to July 1, 1992, out-district tuition could not be charged for any student attending a community college whose residence outside the community college district is in another community college district. K.S.A. 71-304. In addition, out-district state aid entitlement could not be based upon credit hours in any subject or course, the principal part of which was taught at a location outside of the county of the main campus of the community college, unless the location of such subject or course was specifically authorized by the State Board. K.S.A. 71-609(a). Thus, prior to 1992, BCCC was not required by statute to obtain WSU's approval to charge for out-district tuition for Sedgwick County residents attending BCCC in Butler County or for Sedgwick County residents attending courses approved by the State Board outside of Butler County.

Subsequent to July 1, 1992, in addition to obtaining specific authorization from the State Board, no out-district tuition could be based upon or charged for credit hours in any subject or course which is taught in a county in which the main campus of a state educational institution is located, unless the teaching of such subject or course is specifically authorized by the chief executive officer of the state educational institution or by a designee of the chief executive officer. K.S.A. 71-609(b).

We agree with BCCC's analysis. The district judge erred in determining that BCCC was required to obtain specific authorization from the chief executive officer of WSU for classes BCCC taught in Sedgwick County prior to the effective date of K.S.A. 71-609(b).

### Out-District Resident/Course

Out-district residents and out-district courses are determined by statute. Persons enrolling in a community college who, if adults, have not been, or if minors, whose parents have not been, residents of the county in which is located the principal campus of such community college for six months prior to enrollment for any term or session are nonresidents of such community college district for out-district state aid entitlement, out-district tuition, and fee purposes. K.S.A. 71-401. "Residence" means the place which is adopted by a person as the person's place of habitation and to which, whenever the person is absent, the person has the intention of returning. When a person eats at one place and sleeps at another, the place where the person sleeps shall be considered the person's residence. K.S.A. 77-201 *Twenty-third.*

In addition to the statutory provision determining residence, there is statutory authority for the State Board to adopt rules and regulations prescribing criteria or guidelines for determination of residence of students for the purpose of determining liability of counties for out-district tuition of students in community colleges and out-district state aid entitlement. K.S.A. 71-403.

K.A.R. 91-8-31(a) defines "out-district course" as any class offered by a community college for credit at a location outside the community college district in which the community college is lo-

cated and which: (1) carries credit applicable to regular on-campus programs; (2) is commensurate in quality to on-campus courses; and (3) is taught by faculty chosen on the same criteria as full-time, on-campus faculty are chosen. K.A.R. 91-25-1a(a)(1) defines "out-district student" as a student who is a resident of Kansas but who resides outside of a community college district. Based on the statutes and regulations, the State Board determines an individual's residence for the purpose of out-district tuition and out-district state aid entitlement. K.S.A. 71-403.

The State Board correctly certified that BCCC is entitled to collect out-district tuition for teaching courses for college credit to Sedgwick County residents (1) for classes taught at BCCC's main campus and (2) for classes taught at McConnell prior to July 1, 1992, the effective date of K.S.A. 71-609(b). To collect out-district tuition for classes taught under the contract with McConnell subsequent to July 1, 1992, in addition to the contract with McConnell, BCCC must have specific authorization from the chief executive officer of WSU. K.S.A. 71-609(b).

We affirm the ruling of the district court that BCCC is entitled to judgment for out-district tuition due for classes not taught at McConnell and classes taught at McConnell prior to July 1, 1992. Because of our decision as to the McConnell classes taught subsequent to the effective date of 71-609(b), we remand the case to the district court for further proceedings to determine whether any out-district tuition is due BCCC for McConnell classes taught subsequent to July 1, 1992. We further affirm the district court's finding, as argued by BCCC, that the law does not permit the imposition of prejudgment interest against a governmental entity. Because of our decision, the remaining issues are moot.

Affirmed in part, reversed in part, and remanded for further proceedings.

ABBOTT, J., not participating.

EDWARD LARSON, Judge, assigned.