No. 115,194

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

THE SALINA JOURNAL
and
THE ASSOCIATED PRESS,
*Appellees*,

v.

THE HONORABLE SAM BROWNBACK, GOVERNOR OF KANSAS;
EILEEN HAWLEY, COMMUNICATIONS DIRECTOR/PRESS SECRETARY, OFFICE OF
GOVERNOR BROWNBACK;
and
KIM BORCHERS, DIRECTOR OF APPOINTMENTS FOR GOVERNOR BROWNBACK,
*Appellants*.

SYLLABUS BY THE COURT

1.

When no material facts are in dispute, appellate courts will review a summary judgment order de novo.

2.

Interpretation of a statute is a question of law over which appellate courts have unlimited review.

3.

The most fundamental rule of statutory interpretation is that the intent of the legislature governs if that intent can be ascertained.

4.

In determining the intent of the legislature, appellate courts must first look to the plain language of the statute in question. During the examination of the plain language of the statute, appellate courts must give common words their ordinary meanings. If the legislature's intent is clear under the plain language of the statute, then no further analysis should occur.

5.

When a statute is plain and unambiguous, appellate courts should not speculate about the legislative intent behind that clear language, and they should refrain from reading something into the statute that is not readily found in its words.

6.

Appellate courts should only use the canons of statutory construction if the intent of the legislature is not clear under the plain language of the statute.

7.

The function of liberal construction is called into use where there is ambiguity in the language of the statute, or, in other words, where there are one or more interpretations which may fairly be made. It is also well established that the doctrine of liberal construction does not allow an appellate court to delete vital provisions or supply vital omissions in a statute. No matter what the legislature may have really intended to do, if it did not in fact do it, under any reasonable interpretation of the language used, the defect is one which the legislature alone can correct.

8.

K.S.A. 2014 Supp. 45-221(a)(4), the personnel records exception, states: Except to the extent disclosure is otherwise required by law, a public agency shall not be required to disclose personnel records, performance ratings, or individually identifiable records

pertaining to employees or applicants for employment, except that this exemption shall not apply to the names, positions, salaries or actual compensation, employment contracts, or employment-related contracts or agreements and lengths of service of officers and employees of public agencies once they are employed as such.

9.

The last antecedent doctrine says relative or modifying phrases are to be applied to the words immediately preceding them and are not to be construed as extending to remote phrases.

10.

It is a well-known principle that courts should presume that the legislature does not intend to enact useless or meaningless legislation. Thus, courts should avoid an interpretation that would render any part of the legislation useless or meaningless.

Appeal from Shawnee District Court; REBECCA W. CROTTY, judge. Opinion filed April 7, 2017. Reversed and remanded with directions.

*Brant M. Laue*, chief counsel, Office of the Governor, for appellants.

*Nathanael Berg* and *Russel B. Prophet,* of Hampton & Royce, L.C., of Salina, for appellees.

Before HILL, P.J., GREEN, J., and BURGESS, S.J.

GREEN, J.:  The Salina Journal and The Associated Press (collectively referred to as "plaintiffs") submitted separate Kansas Open Records Act (KORA) requests with the Office of the Governor. Plaintiffs requested records pertaining to all applicants seeking appointment to two newly created Saline County commissioner positions. Their request was denied. As a result, plaintiffs jointly filed a petition to enforce their request against Governor Sam Brownback, Eileen Hawley, and Kim Borchers (collectively referred to as

3

"defendants"). Defendants argued that the records plaintiffs requested were exempt from disclosure under K.S.A. 2014 Supp. 45-221(a)(4), (20), and (30)—the personnel records exception, the preliminary working papers exception, and the privacy exception, respectively. Eventually, both parties moved for summary judgment. The trial court granted plaintiffs' motion for summary judgment because it found that none of the exceptions defendants cited were applicable.

On appeal, the defendants maintain that the records requested by plaintiffs for release were exempt from disclosure under the personnel records exception. Thus, the question before us is whether the records requested by plaintiffs from the Office of the Governor pertaining to applicants seeking appointment to the two newly created Saline County commissioner positions come within the expressly authorized exemption from disclosure under K.S.A. 2014 Supp. 45-221(a)(4), (20), or (30). We determine that the records requested by plaintiffs come within the expressly authorized exemption of K.S.A. 2014 Supp. 45-221(a)(4). Therefore, the trial court was without authority to order the release of this information to plaintiffs. Accordingly, we reverse and remand to the trial court with directions to enter summary judgment in favor of the defendants.

On November 4, 2014, the people of Saline County voted to expand the Saline County Commission from three to five districts. This resulted in commissioner vacancies in the two newly formed districts. Under K.S.A. 2014 Supp. 19-203(c), when a county votes to expand the number of districts within its county commission, the Governor must fill the commissioner vacancies by appointment "within 30 days of the date of the adoption of the resolution dividing the county into commissioner districts."

On December 9, 2014, The Salina Journal faxed a letter to Borchers, the Director of Appointments for Governor Brownback, requesting "the applications, and any and all applications that may be submitted" for the two new commissioner positions. The Salina Journal asserted that it was entitled to review the applications under KORA. On

4

December 12, 2014, Hawley, the Communications Director and Press Secretary for Governor Brownback, responded that the applications were "not subject to the [KORA]" under K.S.A. 2014 Supp. 45-221(a)(4). K.S.A. 2014 Supp. 45-221(a)(4), commonly referred to as the personnel records exception, states:

> "[A] public agency shall not be required to disclose:
>
> . . . .
>
> "(4) Personnel records, performance ratings or individually identifiable records pertaining to employees or applicants for employment, except that this exemption shall not apply to the names, positions, salaries or actual compensation employment contracts or employment-related contracts or agreements and lengths of service of officers and employees of public agencies once they are employed as such."

On December 18, 2014, The Associated Press emailed Hawley, requesting "a list of the candidates for each of the two newly created seats on the Board of County Commissioners for Saline County, along with their hometowns" under KORA. Hawley responded that The Associated Press was not entitled to the information requested, again citing the personnel records exception.

On January 15, 2015, plaintiffs jointly filed a petition against Governor Brownback with the Shawnee County District Court, requesting "injunctive and other appropriate relief in seeking the disclosure and release of the agency records improperly withheld from [them]" under KORA. Plaintiffs asserted that the personnel records exception was inapplicable because the Saline County commissioner applicants were not applicants for employment as stated under K.S.A. 2014 Supp. 45-221(a)(4). On May 1, 2015, plaintiffs filed an amended petition in which they named Governor Brownback as well as Hawley and Borchers as defendants. Aside from naming Hawley and Borchers as defendants, The Salina Journal and The Associated Press' amended petition was identical to their original petition.

5

Defendants answered plaintiffs by denying that the personnel records exception was inapplicable.

On June 1, 2015, defendants moved for summary judgment against plaintiffs. In their motion for summary judgment, defendants argued that summary judgment was appropriate because the information that plaintiffs requested was exempt from disclosure under the personnel records exception. Defendants emphasized that the personnel records exception states that disclosure of information under KORA is not required as to "[p]ersonnel records, performance ratings or individually identifiable records pertaining to employees or *applicants for employment*." (Emphasis added.) K.S.A. 2014 Supp. 45-221(a)(4). Defendants argued that the persons applying for the commissioner positions were applicants for employment; therefore, the exception applied.

Last, defendants briefly argued that two other KORA exceptions applied. Specifically, defendants argued that the records plaintiffs requested were exempt from disclosure under the preliminary working papers exception and the privacy exception. K.S.A. 2014 Supp. 45-221(a)(20)—the preliminary working papers exception—states that the following information is exempt from disclosure under KORA:

> "Notes, preliminary drafts, research data in the process of analysis, unfunded grant proposals, memoranda, recommendations or other records in which opinions are expressed or policies or actions are proposed, except that this exemption shall not apply when such records are publicly cited or identified in an open meeting or in an agenda of an open meeting."

Moreover, K.S.A. 2014 Supp. 45-221(a)(30)—the privacy exception—states that the following information is exempt from disclosure under KORA: "Public records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy."

6

Plaintiffs responded that the trial court should deny defendants' summary judgment motion. Plaintiffs did not controvert any of the defendants' material statements of fact. Nevertheless, plaintiffs contended that the personnel records exception was inapplicable because there was a difference between applicants for employment, which were clearly covered under the personnel records exception, and applicants for appointment, which they asserted were not covered under the personnel records exception. Plaintiffs also cited *Southwest Anesthesia Serv., P.A. v. Southwest Med. Ctr.*, 23 Kan. App. 2d 950, 937 P.2d 1257 (1997), for the proposition that the personnel records exception applies only when a party requests information about the employer's employees. Plaintiffs emphasized that in *Southwest Anesthesia Service*, this court held that the personnel records exception did not exempt from disclosure the hospital's records pertaining to physicians who had privileges to provide care at the hospital but were not employed by the hospital. 23 Kan. App. 2d at 953. In the context of this case, plaintiffs argued that the *Southwest Anesthesia Service* precedent meant that the personnel records exception did not apply to the applicants for the commissioner positions because Governor Brownback would not employ the successful applicants.

As to the preliminary working papers exception, plaintiffs argued that this exception would apply only if Governor Brownback's viewpoints were included on the applications, in which case defendants could redact that information. As to the privacy exception, plaintiffs argued that information like the applicants' social security numbers and driver's license numbers would have to be redacted from their applications. Yet, plaintiffs argued that this exception did not allow defendants to exempt from disclosure the remaining information requested.

On September 18, 2015, the Shawnee County District Court denied defendants' motion for summary judgment. First, the trial court held that *Southwest Anesthesia Service* stood for the proposition that "only employees of the agency from which records are requested qualify for the exemption under K.S.A. 45-221(a)(4)." In other words, the

trial court held that *Southwest Anesthesia Service* held that all requests for records pertaining to "nonemployees" were not exempt from disclosure under the personnel records exception. Accordingly, because the applicants for the commissioner positions were nonemployees, the trial court found that the personnel records exception was inapplicable. Then, the trial court further found that *Southwest Anesthesia Service* supported that the information that plaintiffs requested was not exempt from disclosure under the personnel records exception because "while the applications for appointment may be essentially equivalent to applications for employment, the applicants are not seeking the employment with the agency from which the records were requested—or, indeed, from any other state agency under the auspices of the executive branch of Kansas government."

In regards to defendants' assertion that the preliminary working papers exception applied, the trial court found it did not apply because The Salina Journal had requested the applications and The Associated Press had merely requested the names and hometowns of applicants; this meant that the records plaintiffs requested would not have contained Governor Brownback's viewpoints. In regards to defendants' assertion that the privacy exception applied, the trial court found that to the extent that the application information requested contained "personal information, such as social security numbers and driver's license numbers, such private information shall be redacted." Yet, the trial court found that all the remaining information within the records plaintiffs requested was disclosable.

Following the denial of defendants' motion for summary judgment, plaintiffs jointly moved for summary judgment. In this motion, plaintiffs cited the trial court's reasoning in denying defendants' motion for summary judgment as the basis for granting their motion for summary judgment. Defendants responded to plaintiffs' motion for summary judgment by simply citing to their arguments in their previous filings and motion for summary judgment.

8

On December 18, 2015, the trial court granted plaintiffs' motion for summary judgment by citing back to its reasoning within its order denying defendants' motion for summary judgment. The trial court reemphasized that it believed none of the KORA exceptions defendants relied upon applied.

Immediately after the trial court granted plaintiffs' motion for summary judgment, defendants moved to stay the trial court's judgment requiring them to release the information under KORA pending appeal to this court. The trial court granted defendants' motion to stay pending appeal.

*Did the Trial Court Err by Granting Plaintiffs' Motion for Summary Judgment?*

Defendants' sole argument on appeal is that the trial court erred when it granted plaintiffs' motion for summary judgment. Defendants argue that the trial court erred because the personnel records exception, the preliminary working papers exception, and the privacy exception exempted them from disclosing the records plaintiffs requested under KORA. As a result, defendants ask that this court reverse the trial court's summary judgment order.

On the other hand, plaintiffs argue that the trial court correctly granted their motion for summary judgment because the records they requested constitute public records for which no exception exists. Plaintiffs emphasize that KORA states that "the public policy of the state [is] that public records shall be open for inspection by any person unless otherwise provided by this act, and *this act shall be liberally construed and applied to promote such policy*." (Emphasis added.) K.S.A. 45-216(a). Plaintiffs' arguments on appeal hinge on this court "liberally construing" the personnel records, the preliminary working papers, and the privacy exceptions to read in their favor.

9

Nevertheless, as explained later, the most fundamental rule in statutory construction is that the intent of the legislature, as developed by plain language of its legislation, governs. All other rules, including rules regarding liberal construction, are subordinate to this rule.

*Standard of Review*

In this case, when no material facts are in dispute, appellate courts will review a summary judgment order de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013). Moreover, to the extent this case involves statutory construction, interpretation of a statute is a question of law over which this court exercises unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

*Fundamental Rules of Statutory Interpretation*

Because this case turns on the meaning of the certain disclosure exceptions to KORA, it is important to review the fundamental rules of statutory interpretation. The most fundamental rule of statutory interpretation is that the intent of the legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). In determining the intent of the legislature, appellate courts must first look to the plain language of the statute in question. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). During the examination of the plain language of the statute, appellate courts must give common words their ordinary meanings. 304 Kan. at 409. If the legislature's intent is clear under the plain language of the statute, then no further analysis should occur. 304 Kan. at 409. Importantly, appellate courts should not speculate about the legislature's intent when it is clearly stated in the statute. 304 Kan. at 409. Moreover, appellate courts should always refrain from reading language into a statute that is not readily found in the plain language. 304 Kan. at 409.

Accordingly, appellate courts should only use the canons of statutory construction if the intent of the legislature is not clear under the plain language of the statute. 304 Kan. at 409. Statutory construction canons include the doctrine of liberal construction. In *Eveleigh v. Conness*, 261 Kan. 970, 977-78, 933 P.2d 675 (1997), our Supreme Court explained the doctrine of liberal construction and its application as follows:

"The true purpose of the liberal construction doctrine . . . is to carry out the intention of the legislature. In *Board of Trustees of Butler Co. Comm. College v. Board of Sedgwick Co. Comm'rs*, 257 Kan. 468, 476, 893 P.2d 224 (1995), we said: 'The function of liberal construction is called into use where there is ambiguity in the language of the statute or, in other words, where there are one or more interpretations which may fairly be made.' It is also well established that the doctrine of liberal construction does not allow this court to delete vital provisions or supply vital omissions in a statute. No matter what the legislature may have really intended to do, if it did not in fact do it, under any reasonable interpretation of the language used, the defect is one which the legislature alone can correct. [Citation omitted.]"

*Personnel Records Exception*

Defendants' principal argument on appeal is that the trial court erred by finding that the personnel records exception did not exempt them from disclosing the records plaintiffs requested. Again, K.S.A. 2014 Supp. 45-221(a)(4), the personnel records exception states:

"Except to the extent disclosure is otherwise required by law, a public agency shall not be required to disclose:

. . . .

"(4) Personnel records, performance ratings or individually identifiable records pertaining to employees or applicants for employment, except that this exemption shall not apply to the names, positions, salaries or actual compensation employment contracts

11

or employment-related contracts or agreements and lengths of service of officers and employees of public agencies once they are employed as such."

Thus, for this exception to apply in this case, defendants must establish the following: (1) that the information requested constituted public records concerning personnel records, performance ratings, or individually identifiable information; (2) that the public records belonged to a public agency; and (3) that the public records pertained to applicants for employment. Then, if the defendants can establish the preceding, defendants must further establish that the public records requested do not fall under the exception to the personnel records exception, that is, that the information requested did not involve "the names, positions, salaries or actual compensation employment contracts or employment-related contracts or agreements and lengths of service of officers and employees of public agencies once they are employed as such." K.S.A. 2014 Supp. 45-221(a)(4).

The parties do not dispute that the records requested by plaintiffs constituted a "public record" that contained either personnel records, or performance ratings, or other individually identifiable information. See K.S.A. 2014 Supp. 45-217(g). Moreover, as conceded by plaintiffs at oral arguments and asserted by defendants in their brief, the Office of the Governor and the Saline County Commission both constitute public agencies under K.S.A. 2014 Supp. 45-217(f) of KORA.

To determine whether these records in question were public records being held by a public agency, a definition of a public agency is helpful to our inquiry. According to K.S.A. 2014 Supp. 45-217(f)(1), a public agency is defined as follows:

> "'Public agency' means the state or any political or taxing subdivision of the state or any office, officer, agency or instrumentality thereof, or any other entity receiving or expending and supported in whole or in part by the public funds appropriated by the state or by public funds of any political or taxing subdivision of the state."

12

Here, we note the Office of the Governor is the state because it is the head office within the executive branch. Meanwhile, the Saline County Commission is a political and taxing subdivision of the state. See K.S.A. 19-201 *et seq.* (describing the formation and powers of county commission, which include making orders and levying taxes [K.S.A. 19-212]); see also K.S.A. 2014 Supp. 75-4318(a) of the Kansas Open Meetings Act (KOMA) (stating that all "political and taxing subdivisions thereof, including boards, *commissions*, authorities, councils, committees, subcommittees and other subordinate groups thereof" are required to comply with KOMA [Emphasis added.]). Thus, the records plaintiffs requested were clearly public records being held by a public agency.

As a result, it is undisputed (a) that the records requested constituted public records, and (b) that the public records requested belonged to a public agency. Only three questions remain: (1) Does the holding of *Southwest Anesthesia Service* control the outcome of this case? (2) Does the phrase "applicants for employment" exclude persons applying to be appointed to an elected position? (3) Does the phrase "applicants for employment" exclude persons applying to be appointed by one public agency with the goal of obtaining employment with another public agency? Plaintiffs assert that the answer to the preceding questions is "yes," while defendants assert that the answer to these questions is "no."

Southwest Anesthesia Service *Is Inapplicable*

Plaintiffs rely very heavily on *Southwest Anesthesia Service* in arguing that the personnel records exception was inapplicable. Moreover, the trial court adopted plaintiffs' argument regarding *Southwest Anesthesia Service* in granting summary judgment in favor of the plaintiffs.

In *Southwest Anesthesia Service*, Southwest Anesthesia Service (Southwest) submitted a KORA request to the county hospital for "certain records pertaining to six doctors who were not employed by the hospital, but had privileges to provide medical services at [the county hospital]." 23 Kan. App. 2d at 951. In essence, the physicians were independent contractors with the county hospital. The county hospital denied Southwest's request, citing the personnel records exception. Southwest sued for enforcement of its KORA request, and the trial court determined that the records requested were not exempt from disclosure under the personnel records exception. On appeal, this court agreed with the trial court. In doing so, this court explained:

> "[The personnel records exception] pertain[s] to records relating to employees or applicants for employment. [The county hospital] acknowledges the physicians in question are not employees, but argues that there is no reason to distinguish between the records of physician employees and the records of physicians with staff privileges. . . .
> "The words of the KORA exemption are plain and unambiguous. The duty of the court is to give effect to the intention of the legislature as expressed, rather than to determine what the law should or should not be. [Citation omitted.] Statutory words are presumed to have been consciously chosen with an understanding of their meaning, and intentionally used with the legislature having meant what it said. [Citation omitted.] *The cited exemptions relate only to employees*, and the district court correctly found them to be inapplicable. Any extension of the exemptions to cover persons other than employees is a matter for the legislature." (Emphasis added.) *Southwest Anesthesia Service*, 23 Kan. App. 2d at 952-53.

Thus, *Southwest Anesthesia Service* involved a situation where certain physicians had privileges to work at the county hospital, but they were not employed by the county hospital. Moreover, the physicians were not seeking employment from the county hospital. Indeed, the issue of whether the physicians were "applicants for employment" under the personnel records exception was not at issue in *Southwest Anesthesia Service* because nothing indicated that the physicians were seeking employment from the county hospital or any other public agency. Accordingly, under the circumstances where the

14

physicians were not employed or applying for employment at the county hospital or any other public agency, the *Southwest Anesthesia Service* court held that the physicians fell outside the scope of the personnel records exception.

As stated earlier, plaintiffs argued that *Southwest Anesthesia Service* controlled the outcome of this case in regards to the personnel records exception. In agreeing with the plaintiffs' argument, the trial court summarized its interpretation of *Southwest Anesthesia Service* as follows:

> "The [*Southwest Anesthesia Service*] Court determined that the KORA exemptions do not apply to nonemployees. In the Reply, [defendants minimize] the holding in *Southwest*, claiming it only applies to independent contractors who were not employees of the hospital. While accurate as to the specific result of *Southwest*, [this] Court concludes that *Southwest'*s ultimate legal conclusion further applies [to] any nonemployee of a public agency. Therefore, only employees of the agency from which records are requested qualify for the exemption under K.S.A. 45-221(a)(4)."

Then, the trial court applied its interpretation of *Southwest Anesthesia Service* to this case, stating:

> "Just as the Court of Appeals distinguished between physicians employed by the hospital and physicians independently contracted to work at the hospital, this Court distinguishes between the [applicants] for employment for state positions and [applicants] for employment for positions with separate public entities—which, though appointed by the Office of the Governor, are not employees of an agency under the Governor's purview. Accordingly, K.S.A. 45-221(a)(4) is inapplicable to [plaintiffs'] request."

Nevertheless, there are clearly problems with the trial court's analysis.

First, the trial court errantly construed the *Southwest Anesthesia Service* court's holding as meaning that records pertaining to all "nonemployees" are not exempt from

15

disclosure. Again, the personnel records exception exempts from disclosure "records pertaining to employees *or* applicants for employment." (Emphasis added.) K.S.A. 2014 Supp. 45-221(a)(4). Therefore, the personnel records exception can apply in two circumstances: (1) when a party requests records about an employee or (2) when a party requests records about an applicant for employment. An independent contractor is something other than an employee or applicant for employment because they are not employees nor are they seeking to obtain employment through an application process. This is why independent contractors, like the physicians in *Southwest Anesthesia Service*, do not come within the expressly authorized personnel records exception.

The *Southwest Anesthesia Service*'s holding that records pertaining to nonemployees were not exempt from disclosure under the personnel records exception, however, does not mean that nonemployee-applicants for employment are no longer covered under the exception. Once more, the *Southwest Anesthesia Service* court did not specifically analyze the disjunctive phrase "or applicants for employment" because the meaning of that phrase was never at issue. The *Southwest Anesthesia Service* court acknowledged that the personnel records exception applied to record requests pertaining to applicants for employment. 23 Kan. App. 2d at 952. Yet, under circumstances where the independent contractors in question were neither employed nor applying for employment with a public agency, the court held that such nonemployees were not covered under the personnel records exception. As a result, the *Southwest Anesthesia Service* court never held that the personnel records exception would never apply to records pertaining to persons who were "nonemployees" simply because they were still in the application for employment process or they never made it out of the application for employment process.

Additionally, we point out that persons applying for employment are necessarily nonemployees as to the job they are seeking to attain. This means that both plaintiffs and the trial court's interpretation of the *Southwest Anesthesia Service* holding contradicts the

16

plain language of the personnel records exception. In fact, if we were to adopt plaintiffs and the trial court's interpretation of the *Southwest Anesthesia Service* holding, this would render the "applicants for employment" language meaningless.

Accordingly, the trial court's conclusion that the *Southwest Anesthesia Service* court's "ultimate legal conclusion . . . applies [to] *any nonemployee* of a public agency," was clearly flawed. (Emphasis added.) The trial court's ruling fails to take into account that *Southwest Anesthesia Service* did not involve records pertaining to applicants for employment with a public agency, which is at issue in this case. By failing to recognize this factual distinction, the trial court enlarged the decision of *Southwest Anesthesia Service* beyond its holding to find that the personnel records exception was inapplicable because the applicants were "nonemployees."

Next, the trial court made a fragile attempt to compare the independent contractor situation in *Southwest Anesthesia Service* to the appointment situation in this case. In its order, the trial court "distinguish[ed] between [applicants] for employment for state positions and [applicants] for employment for positions with separate public entities." The trial court reasoned that this distinction was comparable to one that the *Southwest Anesthesia Service* court made. In making this comparison, the trial court stated that the *Southwest Anesthesia Service* court "distinguished between physicians employed by the hospital and physicians independently contracted to work at the hospital." Yet, as defendants correctly emphasize in their brief, the trial court's distinction "was not based on any proposition stated in the *Southwest Anesthesia* [*Service*] case, which merely held that . . . independent contractors [were] not employees."

Unlike this case, nothing in the *Southwest Anesthesia Service* case involved persons applying for appointment with one public agency to become employed with another public agency. Moreover, unlike in *Southwest Anesthesia Service,* the persons seeking appointment to the commissioner positions in this case were not seeking to be

17

independent contractors with the Office of the Governor, nor would they be considered independent contractors with either the Office of the Governor or Saline County Commission once appointed. Instead, upon appointment, the successful applicants would become employees of the Saline County Commission. In short, the appointment situation at issue in this case is in no way comparable to the *Southwest Anesthesia Service* court's "distin[ction] between physicians employed by the hospital and physicians independently contracted to work at the hospital." Therefore, the trial court's analogy is unsupported.

In conclusion, the trial court's reliance on *Southwest Anesthesia Service* is misplaced for two reasons. First, the trial court enlarged the *Southwest Anesthesia Service* holding to allow disclosure of all records pertaining to "nonemployees," including applicants for employment, who are necessarily nonemployees during the application stage. Second, the facts in this case are not comparable to those in *Southwest Anesthesia Service*. Indeed, the *Southwest Anesthesia Service* decision affords no basis for the trial court to rule that plaintiffs' disclosure requests—for information on applicants for employment—was disclosable despite the personnel records exception.

*Defendants Properly Invoked the Personnel Records Exception*

Turning to the question of whether the disclosure requests of the plaintiffs come with the expressly authorized exemption of K.S.A. 2014 Supp. 45-221(a)(4), commonly referred to as the personnel records exception, we note that the statute states:

> "[A] public agency shall not be required to disclose:
>
>     . . . .
>
>     "(4) Personnel records, performance ratings or individually identifiable records pertaining to employees or applicants for employment, except that this exemption shall not apply to the names, positions, salaries or actual compensation employment contracts or employment-related contracts or agreements and lengths of service of officers and employees of public agencies once they are employed as such."

18

Despite the clear statutory language requiring "a public agency" to not disclose certain records pertaining to "employees or applicants for employment," the plaintiffs argue that the following additional unstated statutory conditions exist: (1) that persons who are applying for employment cannot seek employment through an appointment application process and (2) that a public agency may invoke the exception only when the public agency conducts the application process and will ultimately employ the successful applicants.

Again, in making these arguments, plaintiffs emphasize that the liberal construction doctrine requires this court to err on the side of transparency. Yet, this court declines to apply this preferential rule because K.S.A. 2014 Supp. 45-221(a)(4) is not ambiguous. Moreover, plaintiffs have never identified any ambiguity in the statute itself to justify their resort to the rule of liberal construction.

Under K.S.A. 2014 Supp. 45-221(a)(4), the phrase "except that this exemption shall not apply to . . . *officers and employees* of public agencies once they are employed as such" modifies the preceding disjunctive phrase "or applicants for employment." (Emphasis added.) The legislature's specific construction of the sentence and using the last antecedent phrase "or applicants for employment" clearly expressed its intent: that the personnel records exception would exempt from disclosure "identifiable records pertaining to" *officers and employees* in public agencies. In statutory construction, under the last antecedent doctrine, relative or modifying phrases are to be applied to the words immediately preceding them and are not to be construed as extending to remote phrases. *Link, Inc. v. City of Hays*, 266 Kan. 648, 654, 972 P.2d 753 (1999); Black's Law Dictionary 882 (6th ed. 1990). Here, the last antecedent phrase "or applicants for employment" would include applications of individuals seeking appointment as officers in public agencies as well as applications of individuals seeking to become employees in

19

public agencies. Any other interpretation of K.S.A. 2014 Supp. 45-221(a)(4) would insert ambiguity and do violence to the plain meaning of this statute.

Why, we ask rhetorically, should the legislature require the disclosure of identifiable records of "officers and employees" once they are employed in public agencies but allow the disclosure of their identifiable records when they are only seeking appointment as officers or seeking to become employees in public agencies? Why, indeed, enact a personnel records exception if the identifiable records of applicants who are seeking appointment as officers or applicants who are seeking to become employees in public agencies are given no added safeguards against disclosure of their employment information by the personnel records exception? The answer is that the legislature would not have enacted such legislation because this legislation would have no purpose for existing. It is a well-known principle that "'"courts should construe statutes to avoid unreasonable results and should presume that the legislature does not intend to enact useless or meaningless legislation."'" *Milano's Inc. v. Kansas Dept. of Labor*, 296 Kan. 497, 501, 293 P.3d 707 (2013) (quoting *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 754, 189 P.3d 494 [2008]). Thus, courts are to avoid an interpretation that would render any part of the legislation meaningless. Clearly, to construe the personnel records exception and the exception to the exception as interpreted by plaintiffs would require this court to find that the exception to the exception is meaningless or surplusage.

Finally, plaintiffs' interpretation of the personnel records exception would make the exception to the personnel records exception redundant. Under plaintiffs' interpretation of the personnel records exception, applicants for appointment to the commissioner positions are not covered under the exception. As a result, plaintiffs argue that because those seeking the commissioner positions were "applying to be appointed," not "applying to be employed," any information about those applying to the commissioner positions fell outside the scope of the personnel records exception, thus making the information disclosable under KORA. Turning our focus back to the

20

exception to the personnel records exception, we note that the exception to the exception states that certain information regarding "officers and employees of public agencies" becomes disclosable "once they are employed as such." Plaintiffs do not contest that the persons who achieved appointment to the commissioner positions were officers of a public agency. Moreover, plaintiffs do not dispute that the information concerning the successful applicants to the commissioner positions would be disclosable under the exception to the exception. As a result, it would be redundant to disclose this information a second time for all successful applicants to the commissioner positions.

Turning once again to plaintiffs' arguments, their first argument turns on their belief that there is a difference between "applicants for appointment" as opposed to "applicants for employment." Plaintiffs contend that there is a fundamental difference between persons seeking employment and persons seeking appointment, meaning that persons seeking appointment do not fall under the "applicants for employment" language in the exception. Yet, nothing within the plain language of the personnel records exception supports this interpretation. This is likely because plaintiffs have conflated the definitions of "application" and "employment."

Within the personnel records exception, the term "application" speaks to the process of attaining employment. Meanwhile, the term "employment" speaks to the ultimate goal that applicants have when submitting their applications. The application process that applicants must endure to obtain employment will differ depending on what position the applicant seeks to obtain. For instance, some application processes might involve an employer interviewing and hiring an applicant. Some application processes might involve bidding for a contract. Moreover, other application processes might involve the applicant seeking appointment to a position. Yet, regardless of the application process used, the applicant's end goal is employment. Thus, unlike plaintiffs' argument, a person is not either an "applicant for appointment" or an "applicant for employment."

21

Instead, a person is an applicant, who must go through an application process, to obtain employment.

Additionally, the personnel records exception simply states that it may apply to records requests for information pertaining to "applicants for employment." Had the legislature intended to treat record requests differently depending on the application process used by public agencies, the legislature could have easily included such language in the personnel records exception. But, it did not. Thus, it is readily apparent that plaintiffs' interpretation regarding applicants for appointment versus applicants for employment is not supported by the plain language of the personnel records exception.

Indeed, the trial court rejected the plaintiffs' interpretation regarding applicants for appointment versus applicants for employment while denying defendants' summary judgment motion. The trial court conceded that "[applicants] for appointment may be essentially equivalent to [applicants] for employment." Moreover, to accept plaintiffs' argument would require this court to violate its longstanding rule of not reading language into a statute that is not readily found therein. *Law v. Law Co. Building Assocs.*, 295 Kan. 551, 566, 289 P.3d 1066 (2012).

Last, plaintiffs' argument ignores the language within the exception to the personnel records exception. In part, the exception to the exception states that the certain information pertaining to "officers and employees of public agencies once they are employed as such" is disclosable. The term "officer" is not defined under KORA. Black's Law Dictionary, however, defines "officer" as follows: "Someone who holds an office of trust, authority, or command. In public affairs, the term refers esp. to a person holding public office under a national, state, or local government, and authorized by that government to exercise some specific function." Black's Law Dictionary 1257 (10th ed. 2014). Certainly, persons on the Board of the Saline County Commission are officers who have authority to exercise power because they hold an office of authority in local

government. K.S.A. 2014 Supp. 19-203(c), the provision allowing the Governor to fill vacancies on the commission, confirms that commissioners are officers of a public agency as it outlines how a "vacancy in [the] *office* of commissioner" must be filled. (Emphasis added.) K.S.A. 2014 Supp. 19-203(c) further outlines when commissioners "assume office." Accordingly, persons in the office of the Board of the Saline County Commission constitute officers of the commission, which is a public agency.

Moreover, as indicated by K.S.A. 2014 Supp. 19-203(c), some officer positions are filled by appointment. In fact, numerous officer positions require the Governor's appointment. See, *e.g.*, K.S.A. 13-13a06; K.S.A. 20-2909; K.S.A. 20-2911; K.S.A. 2014 Supp. 20-3020; K.S.A. 65-2812; K.S.A. 75-2719a; K.S.A. 75-4315a. Nothing within the plain language of K.S.A. 2014 Supp. 45-221(a)(4) supports the conclusion that appointed officers do not fall under the personnel records exception. If not so, the legislature would have more clearly expressed what it was saying by omitting the phrase "officers . . . of public agencies" from the exception to the exception of the personnel records exception. Indeed, if this was the legislature's intent, the legislature could have easily written the sentence omitting this previously mentioned phrase.

In summary, plaintiffs' argument that "applicants for appointment" are not encompassed within the personnel records exception's phrase "applicants for employment" is not supported by the plain language of the personnel records exception. Accordingly, this argument fails.

Plaintiffs' second argument turns on their belief that the public agency that conducts the application process must also be the public agency that ultimately employs the successful applicants. Plaintiffs allege that the exception to the personnel records exception "makes clear that it is applicable to the public agency which employs the employee." Without explanation, plaintiffs then state that the exception to the exception "would only make sense if the public agency [that conducted the application process] is

23

the actual employer because the information subject to disclosure is the information the employer would have."

Yet again, this is not what the exception to the exception states. The exception to the exception simply states that certain information concerning persons employed with "public agencies," whether they be officers or employees, is disclosable. K.S.A. 2014 Supp. 45-221(a)(4). Nothing within this language suggests that the personnel records exception can be used only by public agencies that will conduct the application process and that will ultimately employ the successful applicants. Instead, this language supports that the class of people the exception to the personnel records exception applies to are people who successfully obtained employment with a public agency, without any additional unstated statutory conditions.

Furthermore, had the legislature intended to include this language, it could have easily done so by stating that the exception may be invoked only if the public agency that conducts the application process, and therefore holds the application records, will also hire the successful applicants. The legislature's failure to include this language establishes that this was not the legislature's intent. Accordingly, as with plaintiffs' "applicants for appointment" distinction, this interpretation also is not supported by the plain language of the personnel records exception.

We have difficulty in concluding, as the dissent does, that the language of K.S.A. 2014 Supp. 45-221(a)(6) establishes that the records of persons seeking elected office are disclosable under KORA. K.S.A. 2014 Supp. 45-221(a)(6) states: "[A] public agency shall not be required to disclose: . . . Letters of reference or recommendation pertaining to the character or qualifications of an identifiable individual, except documents relating to the appointment of persons to fill a vacancy in an elected office." The dissent believes that because letters of reference and recommendation "for those seeking elected office are open to the public, as the exemption states, it makes no sense to say the identity of those

24

seeking that public office must remain secret." Slip op. at 28. The dissent's argument hinges on two assumptions which are not supported by the plain language of the statutes involved in this matter.

First, the dissent assumes that the Saline County Commissioner position vacancies were vacancies *in an elected office*. K.S.A. 2014 Supp. 19-203(c), the provision that provides the governor with the power to appoint persons to fill the newly created commissioner positions, however, clearly states that the Governor fills the newly created commissioner positions "by *appointment*" and that the Governor's "*appointees* shall serve until successors are elected and qualified at the next general election." (Emphasis added.) Based on the plain language of K.S.A. 2014 Supp. 19-203(c), it is readily apparent that the commissioner positions are appointed positions until the time of the next general election, at which point the positions become elected positions. Accordingly, despite the dissent's argument to the contrary, the persons in this case, who were seeking appointment to the newly created commissioner positions, were not people seeking an elected office. Clearly, based on the language of K.S.A. 2014 Supp. 19-203(c), those persons who were seeking appointment to one of the newly created commissioner positions would not have been considered persons who were seeking an elected office because they were appointed, as opposed to elected, to fill the office until successors were elected and qualified at the next general election.

Second, the dissent assumes that K.S.A. 2014 Supp. 45-221(a)(6) makes disclosable the letters of reference or recommendation for persons *seeking* appointment to a vacancy in an elected office. Nevertheless, the plain language of K.S.A. 2014 Supp. 45-221(a)(6) states that it is the letters of reference or recommendation "relating to *the appointment of persons* to fill a vacancy in an elected office." (Emphasis added.) The phrase "the appointment of persons" would indicate that the persons who were seeking appointment are no longer candidates for appointment, but they are the persons who will actually be appointed to fill the vacancy. Read in this light, the K.S.A. 2014 Supp. 45-

25

221(a)(6) exception is parallel to K.S.A. 2014 Supp. 45-221(a)(4)'s exception to the personnel records exception, which makes disclosable certain information about successful applicants for employment "once they are employed as such." In other words, both K.S.A. 2014 Supp. 45-221(a)(4) and (a)(6) can be read in harmony, without any conflict; both requiring the disclosure of limited information pertaining to the persons who are ultimately appointed to the vacant positions. Indeed, when practicable, it is this court's duty to harmonize different statutory provisions in a manner that makes the provisions sensible, not to find conflicts within the provisions to create incongruous results. See *Dillon Real Estate Co. Inc. v. City of Topeka*, 284 Kan. 662, 680, 163 P.3d 298 (2007).

*Defendants' Remaining Arguments*

Last, defendants make two additional arguments: a public policy argument and a statutory comparison argument, supporting their interpretation of the personnel records exception. Because the plain language of the personnel records exception is clear and unambiguous as to the legislature's intent, we need not address those arguments.

Reversed and remanded to the trial court with directions to enter summary judgment in favor of the defendants.

\* \* \*

HILL, J. dissenting:  I must respectfully dissent. When my colleagues hold that the names of the individuals seeking the newly created positions on the Saline County Commission must remain secret, I believe they err. They do so by expanding the personnel records exception to the Kansas Open Records Act to include the identities of those seeking elected public office. They equate county commissioners with employees. There is a difference between a policy maker and one who carries out that policy.

26

The default position of the Act is that all records are open unless the record falls within one of the 55 exceptions set out in the law. (There are other exceptions scattered throughout the statutes but they are not pertinent here.) The Governor and the majority hang their hat on K.S.A. 2014 Supp. 45-221(a)(4), commonly referred to as the personnel records exception. It provides that some personnel information can remain concealed, at least for a while:

"[A] public agency shall not be required to disclose:

. . . .

"(4) Personnel records, performance ratings or individually identifiable records pertaining to employees or applicants for employment, except that this exemption shall not apply to the names, positions, salaries or actual compensation employment contracts or employment-related contracts or agreements and lengths of service of officers and employees of public agencies once they are employed as such."

Obviously, once you are on the public payroll, your identity, the position you hold, and what you are paid is all open to the public. After all, tax money is paying for these salaries. But this exemption is clear that information about applicants for employment need not be disclosed.

Our question thus becomes, "Are those seeking elected public office, such as those wanting to fill the vacancies created when the Saline County Commission expanded, applicants for employment?" I would answer that question, "no." They don't want to work for an agency, they want to be that agency. These applicants are not seeking a job, they seek an elected office. They are candidates: ones who seek an office.

The county commission sets the policies that give directions to all parts of county government. It creates a budget that enables that government to function. It levies taxes, causes the bridges and roads to be built, and even decides on the hiring and firing policies

27

for that unit of government. County commissioners are not employees; they are elected public officers.

Another exception found in the Act—K.S.A. 2014 Supp. 45-221(a)(6)—provides some insight in how the legislature deals with information about those seeking an elected office. It states:

> "(a) Except to the extent disclosure is otherwise required by law, a public agency shall not be required to disclose:
>
> . . . .
>
> (6) Letters of reference or recommendation pertaining to the character or qualifications of an identifiable individual, except documents relating to the appointment of persons to fill a vacancy in an elected office." (Emphasis added.)

There are two lessons that can be gleaned from this exemption to the Act. First, if the legislature wanted to exempt the identity of those seeking elected office from public view, it could have done so explicitly and did not. As the exemption points out, it certainly considers information concerning those seeking elected office to be treated differently.

Second, if letters of recommendation for those seeking elected office are open to the public, as the exemption states, it makes no sense to say the identity of those seeking that public office must remain secret.

I would affirm the district court.

28